JULIUS KING OPTICAL CO. v. BILHOEFER et al.

(Circuit Court of Appeals, Second Circuit. December 8, 1903.)

No. 147.

1 PATENTS—INFRINGEMENT—EYEGLASSES.

 The Wells patent, No. 412,442, for eyeglasses, in view of the prior art, must be given a narrow construction, confining it to the specific improvement described, the distinguishing feature of which is the use of two or more pads on each side of the nose, bearing at different points to hold the glasses in place, and is not entitled to the benefit of equivalents. As so construed, it is not infringed by the "Lasso" nose pieces or guards constructed in accordance with the Fox patent No. 695,681, which has a single pad on each side.

Appeal from the Circuit Court of the United States for the Southern District of New York.

The decree of the Circuit Court of the United States for the Southern District of New York, reported in 124 Fed. 521, sustained, and adjudged infringement of, claims 4 and 5 of letters patent No. 412,442, granted October 8, 1889, to Walter S. Wells, for an improvement in eyeglasses. The patent appears in full in the opinion of the Circuit Court. Reversed.

W. C. Strawbridge, for appellants.
H. A. West, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The art of holding eyeglasses in position by mechanism which clamps the nose of the wearer was old at the date of the letters patent in suit. Devices embodying a great variety of constructions for this purpose were in existence, all of them showing the same general feature of bearing pieces on either side of the nose. Those which approximate most nearly to the Wells device are shown in the Fox patent of 1884, the Meyrowitz patent of 1887, the Goldbacher patent of 1884 and the Spencer patent of 1884.

Fox shows an eyeglass having a bow spring, and adjustable nose-pieces arranged out of the plane of the lens frame and adapted to be bent to fit the nose of the wearer.

Meyrowitz describes and shows an eyeglass of similar type having a forwardly slanting spring and a pair of rearwardly projecting nose pieces or pads acted on by the springs. These pads are mounted on pliable connections, and, like the Fox device, are capable of adjustment. The Meyrowitz specification says:

"With the connections C, formed of German silver or like metal, as above described, the slanting upper end, a, of each may be bent with the aid of pliers, so as to vary the angle of the spring to suit different wearers, as illustrated by dotted lines in Fig. 5; or they may be bent laterally, so as to render the lenses closer together (or further apart), as illustrated by dotted lines in Fig. 1; and, in like manner, the arms b, c, may be bent so as to adjust the nose pieces to noses of different shapes. To facilitate this latter, each of said arms, b, c, is preferably provided with an incipient crook, as represented, and said arms may be so bent in any direction and independently of each other, as to move either end of each nose piece inward or outward, for example, without disturbing its other end, as illustrated by dotted lines in Fig. 4; or by bending one or both arms, the nose pieces may be rendered more nearly vertical, as shown in dotted lines in Fig. 5."

The Goldbacher eyeglass has a slotted U-shaped nose spring. Apparently the bearing pieces slant forwardly of the plane of the glasses instead of rearwardly, as in the Fox and Meyrowitz drawings. In other respects they closely resemble the U-shaped spring of the appellants' structure.

Spencer shows arms pivoted to the upper inner edges of the glass frames with round bearing pads attached to the arms which can be adjusted so as to adapt themselves to the nose in whatever position they are placed.

The discussion of the prior art might be indefinitely extended, but sufficient has been said to show how extremely narrow was the field for invention when Wells entered it in 1889. In such circumstances a fundamental patent for eyeglasses of this type was out of the question and patentability was confined to the specific improvements which each inventor contributed to the art.

The contention that Wells was the discoverer of a new scientific principle which conferred a lasting benefit upon the eyeglass-wearing public by saving their eyes from impairment and their noses from disfigurement, cannot be sustained. He was but one of a large number

of inventors and is entitled to hold the specific improvement which he has contributed to the art, and that only. The Wells patent is for an eyeglass and not for a method of adjusting eyeglasses to the nose of the wearer. It is for a structure clearly described in the specifications, having a number of plainly designated parts. As shown in the drawings it is a complicated and ungainly device and one which did not, apparently, commend itself to the public. At least it was admitted at the argument that it was never made commercially. The eyeglasses sold by the appellee, which it is said embody the principles of the Wells invention, discard the complicated mechanicism of the drawings and employ a clamp which resembles more closely the Meyrowitz and Fox guards than it does the guard of the patent in suit. The invention of Wells is broadly stated in his specifications as follows:

"By my invention I provide an eyeglass which is adapted to grasp the fleshy portion of the nose by pads which are rigidly secured and prevent any swiveling or rocking movement, and also other pads adapted to grasp the cartilaginous portion of the nose and to act as steadiments."

The claims involved are substantially identical, claim 5 being limited to an eyeglass having lower pads arranged in the same plane as the lenses.

Claim 4 is as follows:

"In an eyeglass, the combination, with lenses, of posts or standards secured thereto, nose pads secured to said posts or standards and adapted to grip the nose, and other nose pads rigidly secured to said standards above and to the rear of the nose pads first named, and also adapted to grip the nose, substantially as specified."

The combination of the fourth claim contains the following elements: (1) Lenses of the eyeglass. (2) Posts secured to the lenses. (3) Nose pads secured to the posts and adapted to grip the nose. (4) Other nose pads rigidly secured to said posts above and to the rear of the nose pads of the third element, also adapted to grip the nose.

It is plain, therefore, that the claim described two gripping pads, and in addition thereto, two other gripping pads, to the rear of the first-named pads. There must be at least four pads, two on each side of the nose. This proposition is not disputed and is clearly stated by the learned judge of the Circuit Court as follows:

"It is evident that these pads are intended to grasp the nose at least at two different points, one of which points is in the rear of the other and higher up; the purpose being to prevent any swiveling or rocking movement of the glasses."

Plurality of pads is, therefore, the feature which distinguishes the Wells structure from those of the prior art. He employs two or more pads to do the work formerly done by one pad. His pads bear on the side of the nose at two or more distinct points of contact. He does not employ the single-bearing engagement of Fox and Meyrowitz. In fact this single bearing feature is the one he is most anxious to avoid.

The alleged infringing device is known as the "Lasso" guard and is made under the patent to Fox,—the patentee of the earlier patent before discussed,—dated March 18, 1902. The nose pieces of the "Lasso" guard consist each of an approximately U-shaped loop of

pliable metal, one leg being secured to the lens and the other extending upwardly and rearwardly. The upper portion of the free end is enlarged to constitute a pear-shaped bearing pad, having an opening which conforms to the shape of the pad. The appellants do not use two pads or three pads, but one pad only. In order to establish infringement the ingenious theory is advanced that, though made of one integral piece of metal, this pad is in fact two pads, though the line of demarcation between the two no one has ventured to point out with accuracy. In fact the appellants' device operates upon the principle of the former Fox patent rather than that of the patent in suit.

Again it is argued that if the Wells pads were connected together by metal, the guard thus formed would be the appellants' structure. Assuming this to be so, infringement cannot be established by reconstructing the patent to fit the infringing device. The change suggested would convert the Wells structure from one having a plurality of pads to one having a single pad. This cannot be permitted.

The converse of the foregoing proposition is also argued. It is asserted that only certain portions of the "Lasso" guard bear on the side of the nose and that they are at points substantially similar to the bearing points of the Wells pads. The proof does not bear out this contention, on the contrary, the simple experiment of use will demonstrate that all parts of the appellants' pad proper bear upon the nose. Assuming, however, the facts to be as stated, we are of the opinion that the conclusion that infringement is established does not follow. The "Lasso" guard is a unitary structure and cannot be considered as an equivalent of the two distinct and separately mounted pads of the patent in suit. As well might it be said that a patent for a shoe having a sole provided with rubber bosses to prevent slipping is infringed by a shoe having an integral rubber sole, because in both rubber comes in contact with the ground at the same points, and that identity in this respect can be demonstrated by cutting out all the rubber from the sole of the latter shoe except at the points where the rubber bosses appear on the sole of the former.

We are convinced that the appellee is not entitled to equivalents; that if construed broadly to cover the "Lasso" guard the claims are anticipated by the devices of the prior art, and that when limited, as they must be, to the precise construction shown, they are not infringed.

It follows that the decree of the Circuit Court must be reversed, with costs.