## BROWN v. HUNTINGTON PIANO CO.

(Circuit Court of Appeals, Second Circuit. December 6, 1904.)

1. PATENTS—INVENTION—MUSIC DESKS FOR PIANOS.

The Brown patent, No. 468,077, for improvements in music desks for pianos, consisting of mechanism by means of which the opening and closing of the fall-board automatically opens and closes the music desk, and when open locks it in position for use, was not anticipated, and, while of narrow scope, and entitled only to a construction which limits its claims to the particular mechanism described, covers a device both simple and effective, and discloses patentable invention. Claims 1 and 2 also *held* infringed.

2. SAME—PATENTABLE NOVELTY—SIMPLIFYING COMPLICATED MECHANISM.

Patentable novelty may be found in an improvement which simplifies a complicated train of mechanism by eliminating some of its elements, with the result that defects due to the presence of those elements are done away with.

Appeal from the Circuit Court of the United States for the District of Connecticut.

For opinion below, see 131 Fed. 273.

This cause comes here upon appeal from a decree of the Circuit Court, District of Connecticut, sustaining United States patent No. 468,077, February 2, 1892, and finding infringement of its first and second claims. The opinion of the Circuit Court is reported in 131 Fed. 273. To show more fully the mechanical combination of the patent, the following excerpts from the testimony of complainant's expert may be here inserted:

"The invention relates to mechanism for opening and closing the music desk of an upright piano, and more particularly in combining with a music desk and fall-board intervening mechanism, whereby the opening and closing of the fall-board will open and close the music desk. The front portion of the case of the piano above the keyboard, which normally stands in a vertical position, is hung on a horizontal axis or pivot near its upper edge, so that it can be tilted or inclined from the normal vertical position by drawing its lower edge forward, and in such inclined position it serves as the back rest for sheets of music, which are thus supported thereon in convenient position for the person playing the piano. The fall-board is the cover of the keys of the piano which project forward horizontally in front of the portion of the case referred to above, which constitutes the music desk. The fall-board is of approximately L-shape in cross-section, and is hinged to the frame at the angle of the L, and stands, when closed, with one branch extending vertically upwards from the hinge and closing the space in the case at the rear of the keys, and with the other branch extending forward over the keys. This longer branch is made in two sections, connected by a hinge, so that in opening the piano, the supplemental section is first turned upward and rearward back upon the main section, and then the two sections together are turned rearward on the hinge at the angle of the L, so that what was formerly the front horizontal branch comes to the vertical position, filling or closing the space in the case at the rear of the keys, while what was formerly the vertical branch swings backward and downward into the case. * * * There is provided an intervening connection between the fall-board and the music desk, such that when the fall-board is moved to open position the lower end of the music desk is thrown forward to bring it to the inclined position for properly supporting the music, and conversely when the fall-board is closed the music desk is permitted to return to its vertical position. * * * The intervening connection consists of a lever fulcrumed to the case at the rear of the fall-board, the fulcrum of the lever being near the middle of its length and near the level of the upper edge of the vertical portion of the fall-board. The upper end of said lever rests against the inner face of the music desk near its lower edge, so that when the upper arm of the lever is thrown for-

ward the lower edge of the music desk will be pushed forward and brought to the inclined position desired for supporting the music. The lower arm of the lever normally hangs downward below the fulcrum, extending forward therefrom in the space at the rear of the vertical member of the fall-board when closed, and in such position that when the fall-board is opened the said vertical member in turning rearward and downward to the horizontal position will engage with the lower arm of the lever, and force it rearward, and thus cause the upper end of the lever to be moved forward so as to bring the music rest to the inclined position. When the fall-board is fully opened, the rearwardly extending horizontal portion is substantially in line between the hinge of the fall-board and the point of thrust or reaction of the lever, and thus locks the lever with the music rest in inclined position. * * * When the piano is open, the pressure of the music desk on the lever holds the same pressed against the rear end of the open fall-board, and thus takes up any lost motion that there might be in the fulcrum of the lever, and prevents any looseness between the lever and the music desk and fall-board, so that there is no rattling or jar while the piano is open and in use."

The following cuts show the mechanism quite clearly:

The two claims in controversy are:

"(1) In a piano, the combination, with the case provided with a ledge, of a substantially L-shaped fall-board pivotally secured near its base within the case substantially below the front edge of the ledge, each arm or portion of the board being adapted to pass under the ledge and thereby close the space between the ledge and the keys when it is closed or open, a lever pivotally secured at the rear of the fall-board, with its lower end entirely disconnected from but in the path of and adapted to be engaged by the upper portion of the fall-board when the fall-board is opened, and a music-desk in the front of the case adapted to be operated by the lever, substantially as set forth.

"(2) In a piano, the combination, with the case, of a substantially L-shaped fall-board pivotally secured therein near its base, the front portion of the board being hinged, and adapted to be folded so as to pass under the ledge of the case and close the space between the ledge and the keys whether the fall-board be open or closed, a lever pivotally secured at the rear of the board, the lower end of which is inclined and projects toward the board and is adapted to be engaged by and forced back by the upper portion of the fall-board, said upper portion of the board being in a straight line between the end of the lever and the hinge of the board, whereby the lever is locked in its rear position, and a music-desk in the front of the case adapted to be operated by the lever, substantially as set forth."

Odin Roberts, for appellant.

Louis W. Southgate, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). The field of invention is a limited one, and the patent, which is for a minor improvement in connecting mechanism to make the adjustment of the music desk automatic, must be confined closely to the precise combination shown. Nevertheless, despite the three prior patents relied on—Bourne, Felldin, and Harper & Hoover, each being for connecting mechanism effecting such adjustment—we are of the opinion that the patent is valid. The improvement is of no great importance. It was not necessary to the development of the piano as a musical instrument. It covers only a minor feature, which might, as the patentee expresses it, be "a good selling point, or, as they say in the trade, 'talking point,' and something that appealed to the purchaser, making the piano a better 'seller.'" But its utility is undisputed. The facts of infringement and defense concede that much.

The reasons why conclusion is reached that the three prior patents neither anticipate nor restrict the field sufficiently to negative patentable invention are found in the history of the art as testified to by complainant's witnesses. No one familiar with that art was called by defendant to controvert their statements. The first record of a fall-board, substantially L-shaped in cross-section, and hinged to the frame at the angle of the L (a in the cuts, supra), is found in patent to Baker (165,699), July 20, 1875. In that patent the section of fall-board which covers the keys was not in two parts hinged together, but was a single piece. The ensuing year—October 31, 1876—produced the Neill (183,773) fall-board, also known as the "Chickering fall-board," which is substantially identical with the one shown in the patent in suit. It may be that there were other varieties of fall-board at that time, though the record does not disclose them; but the evidence conclusively shows that continuously since 1876 the substantially L-shaped, lower-pivoted folding fall-board making a quarter turn backward when opened has commended itself to the trade, and the "Boston fall-board," as it is called (presumably after the Chickering establishment, which introduced it or made it popular), has been and now is the most universally used of all. The defendant's expert suggested that "it was doubtless observed by the first users of pianos like that shown and described in the Neill patent that there was no object in pulling out the music desk unless the fall-board was open, and it would have been very surprising if the skilled mechanics employed in piano manufacture had not contrived simple connections by which the movement of the fall-board was accompanied automatically by the proper movement of the music desk." Certainly it seems a reasonable assumption that workers in the art undertook to provide such connections, but it was five years before any result was achieved, and that result was embodied in the Bourne patents, September 27, 1881 (Nos. 247,473, 247,474). Bourne, however, did not effect an operative connection between the Boston fall-board and the music desk. He devised an entirely new fall-board, not L-shaped in cross-section, and not pivoted at the angle of the L. There is not a scintilla of evidence to show, as appellant seems to intimate, that fall-boards like the one shown in Bourne existed before he devised the mechanism of his patent. The complainant's expert points out that the Bourne fall-board cannot be readily removed

from the instrument because the links, D, which form a part of the connecting mechanism of his patent, would have to be disconnected from the fall or from the frame, and are in a very inaccessible position, so that it would be a matter of considerable difficulty to disconnect them, and to insure that they were properly reapplied when the fall-board was put back. A close study of the patent shows the correctness of this statement. Now, it is desirable to have the fall-board easily removable without the aid of special skill, so as to allow of such slight repairs and adjustments as are commonly made from time to time by piano tuners. Therefore it appears that Bourne established his automatic connection only by substituting an undesirable for a desirable fall-board. And despite his improvement the trade continued to call for Boston fall-boards in preference to any other, even although such fall-boards had no operative connection with the music desk. It must be assumed that the Bourne improvement, however, did show that automatic connection was a good "talking point," and the inventive abilities of those who produced pianos with Boston fall-boards must have been stimulated to introduce a similar feature in their instrument. Three years, however, elapsed before the appearance of the next device —that of Felldin, November 11, 1884, No. 307,933. Felldin, like Bourne, devised a new form of fall-board. It was so arranged that it could be readily removed, thus obviating the defect above referred to; but it was not a Boston fall-board, and, despite its appearance, the trade continued to demand Boston fall-boards, although the instruments containing them were without the automatic connection, for the problem of establishing such connection between music desk and Boston fall-board had not yet been solved. It must be assumed that the intelligent manufacturers of pianos with Boston fall-boards appreciated the fact that automatic connection would be a "selling point" in their favor, and that they undertook to devise such connection. Nevertheless, it was not until November 1, 1887, that Harper & Hoover showed such a connection in their patent No. 372,616. It seems unnecessary to go into the details of the elaborate and complicated chain of mechanism by which this is accomplished. The criticism of complainant's expert is sound:

"Its link connection introduces features which are objectionable, and are entirely eliminated by the [Brown] construction with its disconnected lever. These objections are that the link construction involves the necessity of disconnecting the fall-board and music rack operating mechanism if the fall-board has to be taken off the piano, and the reconnection of the said parts in proper working relation when the fall-board is put back if the rack-operating mechanism is to perform its work; also that the introduction of jointed parts of this character is liable to cause rattling or jar when the piano is being played upon, and there is always liability of such joints working loose, and possibly coming wholly disconnected."

Patentable novelty may be found in an improvement which simplifies a complicated train of mechanism by eliminating some of its elements, with the result that defects due to presence of those elements are done away with. We are entirely satisfied that Brown was the first to devise a suitable connection between the Boston fall-board and the music desk, which connection does the work without introducing some objectionable element or feature which would neutralize the benefit.

of having the music desk operated automatically, and find patentable invention in his simple and effective combination.

The patent was issued only after repeated rejections, after much solicitation, and several amendments both of specification and claims. It must be confined strictly to the precise language ultimately agreed upon. But upon the closest construction of claims 1 and 2 the defendant infringes, its mechanism being a Chinese copy of that shown in the patent. It is suggested that in defendant's device the lower arm of the lever when the instrument is closed is in contact with the part of the fall-board which operates it, but the language of the claims does not call for a separation in space between those parts; and when it is borne in mind that at one time the patentee proposed to amend his claims by inserting a statement that, when the fall-board is closed, the lower end of the lever is "free, and out of engagement with the fall-board," but subsequently, on rejection by the Patent Office, struck such statement out, the contention that infringement is not shown by reason of such lack of engagement is unpersuasive.

The decree is affirmed, with costs.