## CUMMING v. BAKER & HAMILTON.

(Circuit Court of Appeals, Ninth Circuit. March 19, 1906.)

No. 1,217.

1. PATENTS—CONSTRUCTION OF CLAIMS—IMPROVEMENT PATENTS.

A patent for mere improvement on prior devices must be limited to the precise devices and combinations shown and claimed.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 249.]

2. SAME—INFRINGEMENT—PORTABLE FORGE.

The Cumming patent, No. 386,771, for a portable forge, while valid, is limited by its terms to improvements in the form and arrangement of the several parts and the method of securing them together, and is not infringed by a structure which does not contain the new features therein shown and claimed.

In Error to the Circuit Court of the United States for the Northern District of California.

John H. Miller, for plaintiff in error.

Wm. F. Booth, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This action was brought to recover damages for the alleged infringement of letters patent granted July 24, 1888, to George Cumming, for an "improved portable forge," and by him assigned to the plaintiff in error. On the trial in the court below, and at the close of all the evidence, the counsel for the defendant requested the court to direct a verdict for the defendant, on the ground of noninfringement. The motion was granted, and the jury was so instructed. Judgment for the defendant followed.

If the judgment was right, the ground of the court's action is unimportant.

In the specification contained in the patent sued on, it is stated that:

"The invention consists: First, in the form and arrangement of the several parts of the forge and the method of securing them together, so that great strength and durability, with lightness and portability, are secured, the operation of taking apart and putting together again may be conducted with great facility, and the apparatus may be kept in good order and cleanly condition without difficulty or delay; and, second, in a certain improvement in the form and arrangement of the shell, toothed gearing, spindles, etc., of the blower producing the blast for the furnace, as will be more fully set forth below. * * * The main features of the blower are not new. A blower in some respects similar has already been patented to me July 15, 1884, No. 301,967; but there are important modifications in the manner of construction which render the blower more specially adapted for the purposes of this portable forge. * * *

"What I claim as my invention, and desire to secure by letters patent, is as follows:

"(1) A portable forge consisting essentially of the hearth-pan, the hollow conduit for wind, the blower, and supporting-legs, the whole being secured together with suitable clamping devices, as herein described, and for the purpose set forth.

"(2) In a portable forge, the combination of a hearth-pan securely clamped

upon a horizontal wind-pipe, a horizontal wind-pipe conveying the blast from the blower to the hearth, a suitable blower clamped upon said horizontal wind-pipe, and a suitable stand or frame to support the whole, arranged and operating substantially as and for the purpose described.

"(3) The portable stand herein described, consisting, essentially, of the bent legs inserted and held in the half clamp, the half clamp constructed and operating substantially as and for the purpose described.

"(4) As a means of fastening the legs in the clamp hubs, the combination of the wedge-headed bolt and the rollers arranged and operating together to bind the legs in their sockets, substantially as and for the purposes described.

"(5) In a portable blowing apparatus, the combination of a horizontal hollow wind-conduit, a blower clamped thereto, and a portable stand, as herein described, consisting of the bent tubular legs and clamping-irons, substantially as shown and described.

"(6) A fan blower, as herein described, consisting, essentially, of a shell inclosing the fan and having a removable cover in front to admit the fans, perforated to allow the air to enter, and with a boss in the middle to receive the fan-spindle, the said shell having a set of bearings secured to rear side to support one end of the spindles of the speed-gears; second, a suitable revolving fan inclosed within the shell; third, a cap or cover with internal space to inclose the speed-multiplying gears, fitted and fastened directly to the shell and provided with bearings for the outer ends of the gear-spindles; and, fourth, a set of speed-multiplying gears with spindles and an operating hand-lever, substantially as described."

It will be seen that, according to the patentee's own declaration, the invention claimed consists: First in the form and arrangement of the several parts of the forge and the method of securing them together; and, second, in a certain improvement in the form and arrangement of the shell, toothed gearing, spindles, etc., of the blower producing the blast for the furnace, as is more fully set forth in the specification.

The case shows that portable knock-down forges, the constituent elements of which are a hearth-pan, a wind-pipe, a blower, and supporting-legs, each separable from the other and capable of being joined together by various clamping devices, were old long before the patent to Cumming of 1888. There had also been previously patented to Cumming a hand blower, which is also a fan blower, in which patent he described that invention as relating to certain improvements in hand blowers, and stated that:

"It consists in the application of toothed gearing from the crank-shaft or point of application of the power employed through a train of toothed gear-wheels to the shaft which carries the fan; of the collection and casing in of all of the working parts of the apparatus, so that they are not exposed or widely separated; in a pin and means for keeping the casing holding the gears in its proper place, and of steel buttons in the ends or extremities of the bearings of the gear-spindles, in order to keep the gears in their proper longitudinal positions and take up end-play."

And in which patent he claimed:

"(1) The fan-case having a journal-box centrally located at one end to receive the fan-shaft, and an opening at the opposite end sufficient to receive the fan, in combination with a shell, Y, having a plate to fit said opening, and journal-boxes for one end of the gear-shafts, and a plate, Z, fitting the opposite end of the shell, and having journal-boxes for the opposite ends of the gear and fan-shaft, substantially as herein set forth.

"(2) The fan-case, X, supplemental shell, Y, with its diaphragm, r, and

journal-boxes for gear-shafts, in combination with the exterior closing-plate Z, formed to fit the edge of the shell, and having a means for adjusting and securing it to the fan-case, substantially as herein described.

"(3) The fan-case, X, supplemental shell, Y, with its diaphragm, r. and gear-wheels journaled within, as shown, in combination with the external closing-plate, Z, and the transverse shelf or diaphragm, J, whereby the gears are inclosed, substantially as herein described.

"(4) The fan-case having air-passages around the central shaft, supplemental shell within which the driving-gears are contained, and the diaphragm and exterior closing-plate, said plate and diaphragm being provided with openings through which air may pass to the fan-case, substantially as herein described.

"(5) In a blowing apparatus, the fan-case, supplemental shell, and the exterior closing-plate, Z, with journal-boxes for gear and fan-shafts, the said plate being grooved or channeled to fit the edge of the supplemental shell, and having a pin fitting a corresponding socket, whereby the plate is held in one position and the journal-boxes and shaft are always kept in line, substantially as herein described."

The blower of Cumming of 1884 was, of course, as much a part of the state of the art as any other device patented or used prior to the issuance of the patent in suit.

In the specification contained in the patent in suit, the patentee expressly states that the main features of the blower there claimed are not new, but are " in some respects similar" to the blower patented to him in 1884, but further declares that "there are important modifications in the manner of construction which render the blower more especially adapted for the purposes of this portable forge."

Except in respect to such differences as may exist between the blower of the patent in suit and that patented to Cumming in 1884, the only new idea embodied in the patent in suit is the making of the wind-pipe of the plaintiff's forge serve the double purpose of conveying the blast and supporting certain other parts of which the forge is composed. No previous forge, so far as appears, ever made the wind-pipe perform that double function. That idea was therefore new, and it was useful, too; for it reduced the number of parts of a very useful device, thereby rendering easier and more rapid its separation for transportation, and the reassembling of its various parts for use. Upon that ground the plaintiff in error's patent is sustainable, but it is the only thing new about it, with the exception of the modification in the blower therein specifically described.

We are unable to see any merit in the contention of his counsel that the real invention consists in dividing the forge "along certain well-defined lines," which consists only of the separation of the hearth-pan, blower, wind-pipe, and supporting-legs one from the other, which may be done easily and quickly, and as easily and quickly reassembled. The various parts of the older portable knock-down forges were similarly separated and reassembled. The circumstance that this may be done more readily and quickly with the Cumming forge did not involve the inventive faculty at all. It may, and probably did, make that forge more useful, and therefore more desirable than the others. But there was nothing new about that feature of it.

It must be remembered that the patent sued on is in no sense a pioneer one, but a mere improvement on prior portable forges. In

such cases the patentee is limited to the precise devices and combinations shown and claimed in his patent. Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973; Brown v. Huntington Piano Co., 134 Fed. 735, 67 C. C. A. 639; Rich v. Baldwin, Tuthill & Bolton, 133 Fed. 920, 66 C. C. A. 464; Julius King Optical Co. v. Bilhoefer, 127 Fed. 127, 62 C. C. A. 241; Tabor Bas-Relief Photograph Co. v. Marceau (C. C.) 87 Fed. 871; Ransome v. Hyatt, 69 Fed. 148, 16 C. C. A. 185; Ney v. Ney Mfg. Co., 69 Fed. 405, 16 C. C. A. 293; Overweight Counterbalance Elevator Co. v. Improved Order of Red Men's Hall Ass'n, 94 Fed. 155, 36 C. C. A. 125.

In the case last cited, where, as in the case at bar, the trial court directed a verdict for the defendant, and in which case the contention of the plaintiff in error was mainly directed to the alleged error of the court in not submitting the question of equivalency of certain elements to the jury, in view of the testimony of certain experts, this court said:

"There is a clear distinction drawn, in all of the authorities which discuss the question, between a pioneer invention and an invention merely of improvements by a combination of mechanical devices. A patentee who is the original inventor of a device or machine—a pioneer in the art—is entitled to a broad and liberal construction of his claims; but an inventor who only claims to be an improver is only entitled to what he claims, and nothing more. In other words, the original inventor of a device or machine has the right to treat as infringers all who make or use devices or machines operating on the same principle, and performing the same functions by analogous means or equivalent combinations. 'But if the invention claimed be itself but an improvement on a known machine, by a mere change of form or combination of parts, the patentee cannot treat another as an infringer, who has improved the original machine by use of a different form or combination performing the same functions. The inventor of the first improvement cannot invoke the doctrine of equivalents to suppress all other improvements which are not mere colorable invasions of the first.' "

In the same case we further said:

"The court certainly has the unquestioned right to draw its own conclusions from an exhibition and inspection of the respective machines, or models thereof, as well as from the opinions of expert witnesses. It is not bound to accept such testimony as conclusive. The Conqueror, 168 U. S. 111, 131, 17 Sup. Ct. 510, 41 L. Ed. 937. It considers the facts upon which the opinions of the witnesses are based, and determines from all the evidence in the case whether the conclusions given by the witnesses are sound and substantial. The value of expert testimony generally depends upon the facts stated as a reason for their opinions and conclusions. Green v. Terwilliger (C. C.) 56 Fed. 384, 394; 1 Tayl. Ev. § 58. * * * The law is now well settled that the trial court not only has the power, but it is its duty, where the evidence is insufficient to support a verdict in favor of the plaintiff, to instruct the jury to find a verdict in favor of the defendant. This rule applies to patent as well as other cases, and is as applicable to the question of infringement as to any other material or controlling question involved in the case."

In respect to the blower of the patent in suit, the main features of it were not new, as the patentee himself stated in his specification. Clearly, the claim to it can only be held to cover the differences between it and the blower of the Cumming patent of 1884. These

differences consist of the removable cover in front of the fan casing to admit the fans, a boss in the middle of that cover to receive the fan spindle, a set of bearings on the rear side of the fan casing for one end of the speed gear spindles, a cap on the rear of the casing and secured thereto to form the space for the speed-gears. In the blower of the defendant in error these novel features of the blower of the plaintiff in error do not appear. The defendant's fan casing has not a removable cover in its front, but is composed of two similar parts divisible in the middle; one part being no more the cover than the other.' The defendant's blower has no boss in the middle of its front to receive the forward end of the fan spindle; the forward end of that spindle has no bearing in the front of the fan casing at all; the back of the shell of the defendant's fan casing does not contain a set of bearings for one end of the gear spindle. On the contrary, in the defendant's blower one end of the gear spindles is mounted in bearings, in a completely separate casing. In the defendant's blower there is no back cap or cover, which, together with the back of the fan casing, forms the space for the gears, but the gears are carried and inclosed in an entirely separate casing which is not formed in part of the fan casing, nor does it inclose in connection with the casing any space for any purpose. And as the wind-pipe of the defendant in error's forge does not perform the double function of the plaintiff in error's wind-pipe, no infringement of his patent can be justly affirmed upon the record; for the simple reason that the defendant's forge does not contain the only new elements upon which alone the plaintiff in error's patent is sustainable.

The judgment of the court below is affirmed.