DETROIT TESTING LABORATORY v. ROBISON.

1. MASTER AND SERVANT—INVENTION OF SERVANT NOT PROPERTY OF
   MASTER UNLESS CONTRACTED FOR.
      Where one was hired as an expert chemist and analyst,
      and not to exercise his inventive genius in the discovery
      of patentable ideas for his employer, a patent developed
      by him was his own property and not that of the master,
      although in developing it he used the laboratory and
      time belonging to the master.

2. SAME—TRUST RELATION—INVENTION OF SERVANT NOT PROPERTY
   OF MASTER ON THEORY OF TRUST RELATION.
      Where an invention developed by a servant while in the
      employ of a company would not belong to the company
      under the contract of hiring, the fact that he was a
      stockholder, director, manager, and vice-president of the
      company at the time would not make the invention the
      property of the company on the theory of trust relation,
      since the rule of trust relation has no application under
      the facts of the case.

Appeal from Wayne; Mandell (Henry A.), J.   Sub-
mitted October 26, 1922.   (Docket No. 19.)   Decided
December 29, 1922.

As to the rights of employer and employee with respect to in-
ventions, see notes in 5 L. R. A. (N. S.) 1171; 16 A. L. R. 1177.

Bill by the Detroit Testing Laboratory against Floyd W. Robison and others for an accounting.   From a decree dismissing the bill, plaintiff appeals.   Affirmed.

*Prentis, Mulford, Pugh & Fitch,* for plaintiff.

*Walters & Hicks,* for defendants.

WIEST, J.   In July, 1911, defendant Floyd W. Robison, an expert chemist and analyst, entered the employ of plaintiff company, under a written agreement to devote his entire time and attention to the development and supervision of its dairy and food department, and to co-operate in its general line of business. Later he became a stockholder, director, manager and vice-president of the company.   The company was organized to conduct the general business of chemical and mechanical analysis, testing, inspecting, treatment and reduction of all organic and inorganic substances, and manufactured products of all kinds.   While so in the employ of and interested in the corporation, Mr. Robison discovered a method or "culture" for improving the taste and aroma of coffee and procured a patent thereon.   The discovery is recognized as valuable and several corporations, made defendants herein, have been organized to handle the same, and in which Mr. Robison has extensive holdings of stock.   The bill herein was filed on the theory that, under his employment and relation to the company, the discovery so made belongs to plaintiff, and Mr. Robison, and the corporations interested therein, should be made to turn the same over to plaintiff and account for all benefits received, or, at least, Mr. Robison should be made to surrender all interest he has in the patent and corporations.   Defendant Robison claims that the incentive to make the search, leading to the discovery, came to him privately and not in the course of his employment, and was prosecuted by him as his own

affair, and all use made of plaintiff's laboratory equipment has been paid for, and plaintiff has no rights in the discovery. The case was heard upon proofs in open court, and the trial judge dismissed the bill, and it is here by appeal, to be heard *de novo*.

The matter in question first came to the attention of Mr. Robison when he was invited by a friend to take lunch at the Hotel Statler in Detroit, and there met Emmet G. Beeson who was engaged in the coffee business. At the luncheon Mr. Beeson called attention to the fact:

"That when Java coffees were shipped from the East Indies that the steamers came through very fast and that the coffee was very green when it arrived at the United States and did not have the musty flavor demanded by coffee men; that when Java coffees were put in the hold of a sailing vessel and went around on a long cruise of two or three months, something seemed to take place which turned the coffee brown and gave a very distinct and desired flavor; and that men in charge of the vessels received a premium on the color of the coffees and the longer the vessel was on its trip the browner the coffee would get."

After listening to Mr. Beeson's statement Mr. Robison expressed the thought that the change in the coffee occurred through the action of a micro-organism. Mr. Robison developed this idea, discovered the micro-organism, cultivated the same, and produced a "culture" capable of commercial use and procured a patent thereon. The supplemental work in discovering the micro-organism and developing the "culture" was carried on in the laboratory of plaintiff company, and some of the "culture" was produced there.

Two questions are presented:

The invention having been discovered while Mr. Robison was in the employ of plaintiff, and his working time hired out in the conduct of the business, does the discovery belong to plaintiff?

Does the employment and the official relation of Mr. Robison to the company constitute plaintiff the owner of the patent?

The record consists of 535 pages, and is too long to admit of a review of the evidence within the limits of an opinion. It is not necessary to go extensively into a review of the evidence, for under the most favorable view thereof, for plaintiff, we come to legal points determinative of the case against plaintiff. It appears that the plaintiff company rendered service to several concerns and received stock interests therein. The rights acquired by plaintiff in other corporations were based upon agreements and afford no help in determining a policy binding upon Mr. Robison, or for our guidance in the matter of his obligations to the company. Under the written agreement Mr. Robison was a hired man, and as such he was free to exercise his inventive genius to the accomplishment of any purpose outside of what he was hired to do. If his endeavor was aimed at discovering something for his employer, then, what he happened upon would go where his hire sent it. He was not hired to exercise his inventive genius in the discovery of patentable ideas for plaintiff. His skill as a chemist and bacteriologist, and application thereof to the business he was employed to conduct, could have no relation to his inventive faculties, even though his genius was awakened or quickened by suggestion arising in the course of the employment, unless made so by contract.

Had Robison the right to reason from effect to cause, and upon discovering a cause producing an effect and a method of commercializing the same, constitute the result his own property? The nature of his work involved use of established principles but made no call upon his inventive faculties.

In *Wireless Specialty Apparatus Co.* v. *Mica Con-*

*denser Co.*, 239 Mass. 158 (131 N. E. 307), and reported in 16 A. L. R. 1170, it was held, quoting from the syllabus:

"An invention made by an employee in the course of his employment and at his employer's expense is the property of the inventor unless he has, by the terms of his employment or otherwise, agreed to transfer to his employer its ownership as distinguished from its use."

In the foot-notes to that case, as reported in the A. L. R., are collated practically all the cases upon the subject. The question is not new and the great weight of authority is against the contention of the plaintiff. The contract of employment did not give plaintiff the right to own the invention.

In *Dalzell* v. *Dueber Manfg. Co.*, 149 U. S. 315 (13 Sup. Ct. 886), it was held:

"A manufacturing corporation, which has employed a skilled workman, for a stated compensation, to take charge of its works, and to devote his time and services to devising and making improvements in articles there manufactured, is not entitled to a conveyance of patents obtained for inventions made by him while so employed, in the absence of express agreement to that effect," citing *Hapgood* v. *Hewitt,* 119 U. S. 226 (7 Sup. Ct. 193).

In *Hapgood* v. *Hewitt,* it appeared that:

"During all the time that he (Hewitt) was engaged in devising and constructing the new plough, he was in the employ of the corporation, and drawing a salary of $3,000 a year. The time during which he was so engaged was the regular working hours in the factory. The men who did the manual labor on the new plough were all employees of, and paid by, the corporation; and all the materials used in its construction were bought and paid for by the corporation."

The claim was made there very much like the claim here, that:

"In devising and constructing the plough, Hewitt

was only performing his duty as an employee of the corporation, and carrying out his contract with it; that he was doing only what he was hired and paid to do; that the result of his labors belonged to the corporation; that it became, in equity and good conscience, the true and rightful owner of the right to manufacture the plough; that, if there is any part thereof which is patentable, the patent belonged to the corporation as equitable assignee of Hewitt; and that he was and is bound, in equity and good conscience, to make an assignment of the patent to the corporation or to its trustees."

It was held, however, that:

"Hewitt was not expressly required, by his contract, to exercise his inventive faculties for the benefit of his employer, and there was nothing in the bill from which it could be fairly inferred that he was required or expected to do so."

Under the circumstances in that case it was held that, while the patent belonged to the inventor, the employer had a license to make and sell the patented article.

In the case at bar plaintiff has not proceeded on the theory that Mr. Robison owns the patent and by reason of his employment and relation to the company there exists a naked license under which the plaintiff has the right to make and sell the "culture," so we will not discuss such a theory but confine ourselves to the case plaintiff presents.

Cases may be found, like *Dowse* v. *Federal Rubber Co.*, 254 Fed. 308, where the discovery was made in the course of business by one who was president and general manager of the corporation, and the invention was essential to the existence of the company's business, and it was held to belong to the company. Such cases are readily distinguishable from the instant case. Here the invention was not essential to the conduct of the business carried on by plaintiff. Neither

was it discovered under an employment or in the exercise of an official duty in seeking after an essential necessary to the business of plaintiff. We do not enter upon an extensive review of the authorities upon the subject here involved. They are so fully collated and reviewed in the foot-note to the case in the 16 A. L. R., *supra*, as to save us the labor of doing so, and are, therefore, readily available to the profession.

We are urged to apply the familiar rule of trust relation of Mr. Robison to the company and hold the invention belongs to the company by reason of the fact that the discovery was made while he was a stockholder, director, manager and vice-president. The rule urged is not one of general application and does not arise upon the mere existence of the fiduciary relation, but is one to prevent a violation of obligations by a fiduciary agent and to be applied, or not, upon the facts in a particular case. We may accept the postulate of the trust relation of an officer to a corporation, so fully supported by authority, only to find we have a well established principle in hand with no place to use it. The company was conducting a laboratory business and was entitled to have the loyal services of its officers, but such services did not, and could not, reach and encompass the inventive faculties of its officers. Mr. Robison owed no duty to the company to exercise his inventive genius in its behalf, and, therefore, breached no duty in taking for his own the thought he developed into a patentable creation. The fiduciary relation of Mr. Robison to the company did not require him, in good conscience, to turn the fruit of his inventive faculties over to the company, nor authorize the court, in equity and good conscience, to compel him to do so.

We find no occasion to pass upon the questions of *ultra vires* and estoppel invoked by defendants.

Having in mind all the facts in the case, we hold

that the patent is not the property of plaintiff, and the learned circuit judge was right in dismissing the bill.

The decree is affirmed, with costs to defendants.

FELLOWS, C. J., and MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.