GEAR GRINDING MACHINE CO. *v.* STUBER.

1. APPEAL AND ERROR — QUESTION OF FACT — CREDIBILITY OF WIT-
NESSES—TRIAL JUDGE.

In suit involving determination of scope of a contract of employ-
ment where question is one of fact dependent largely upon
credibility of witnesses, Supreme Court relies largely on opin-
ion of trial judge who had an opportunity to see and hear
witnesses.

2. MASTER AND SERVANT — INVENTION OF SERVANT — CONTRACTS —
BURDEN OF PROOF.

In suit to restrain inventor of patent on constant velocity uni-
versal joint from assigning his patent to others and to compel
assignment to plaintiff who was his employer at time patent
was developed, plaintiff *held*, not to have sustained its burden
of proving defendant was employed to invent although he was
an experienced and skillful draftsman, assigned to assist man
who held several patents on such a joint which had been as-
signed to plaintiff along with future improvements thereon,
and was paid more than a mere draftsman.

3. SAME—ASSIGNMENT OF PATENT TO EMPLOYER.

One employed to make an invention, who succeeds, during his
term of service, in accomplishing that task, is bound to assign
to his employer any patent obtained.

4. SAME—SKILLED WORKMEN—AGREEMENT TO ASSIGN PATENTS NOT
IMPLIED.

One who employs a skilled workman to devote his time and serv-
ices to devising and making improvements in articles manu-
factured by the employer is not entitled to a conveyance of
patents obtained for inventions made by him while so em-
ployed in the absence of express agreement to that effect, as
such an agreement will not be implied.

5. PATENTS—ACT OF INVENTION DEFINED.

> An act of invention consists neither in finding out the laws of nature nor in fruitful research as to the operation of natural laws, but in discovering how those laws may be utilized or applied for some beneficial purpose, by a process, a device or a machine.

6. SAME—SIMPLIFICATION OF MECHANISM AS PATENT.

> The simplification of a mechanism by the omission of several parts constitutes an invention and not a mere improvement, if the simplified mechanism accomplishes the same result as did the more complicated form.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted October 8, 1937. (Docket No. 76, Calendar No. 39,709.) Decided December 14, 1937.

Bill by Gear Grinding Machine Company, a Michigan corporation, against Bernard K. Stuber to restrain the assignment of letters patent and to compel assignment of letters patent to plaintiff and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Beaumont, Smith & Harris* (*Albert E. Meder, Clarence B. Zewadski* and *Whittemore, Hulbert & Belknap,* of counsel), for plaintiff.

*Goodall & Neubeck* (*Beman G. Neubeck,* of counsel), for defendant.

BUTZEL, J. In 1928, Alfred Rzeppa secured a patent for an improvement in a constant velocity universal joint, and entered into a license agreement with plaintiff whereby it became entitled to the use of the patent and all improvements in universal joints thereafter invented by Rzeppa. He also became associated with plaintiff for the purpose of developing and perfecting the universal joint so that plaintiff might commercially produce it. Rzeppa

later was granted additional patents for universal joints on applications filed by him in August, 1929, and June, 1933. After taking out his first patent Rzeppa had difficulties in adapting it to commercial use. Rzeppa discovered that when his original joint was operating at certain angles, the ball cage would not return to its normal position relative to the inner and outer ball races of the joint. After working more than a year in an effort to perfect and develop his universal joint, so that it could be commercially produced with profit, Rzeppa concluded that the work was becoming too heavy for one man and asked for an assistant. Defendant was an experienced and skillful draftsman in plaintiff's engineering department and had been working on drawings for a clutch, but at Rzeppa's request, he was assigned to Rzeppa and thereafter devoted almost his entire time to assisting him. According to Rzeppa's testimony, defendant was to help him in the designing and development of the universal joint and was to devote his efforts to the solving of the problems that had appeared. Defendant was given a desk in a room or space occupied solely by the highest paid employees. His wages were higher than those paid to mere draftsmen.

To eliminate the difficulties in the operation of the joint, Rzeppa conceived the idea of keeping the balls and ball race in their proper position by the use of a pilot pin. His application in June, 1933, covered this improvement as well as an additional one that accomplished the same result by providing for certain disks with eccentric surfaces that tended to cam the balls and ball cage into their proper position. Defendant made drawings of these mechanisms for Rzeppa.

Defendant claims that on March 22, 1932, during the noon hour, while eating his lunch, he conceived

the idea of a self-piloting, constant velocity, universal joint with eccentric surfaces that eliminated the pilot pins and parts set forth in the Rzeppa patent; that at once he made a drawing of his idea, and on the following day at the noon hour made another drawing but more in detail; that thereupon he showed his drawings to Rzeppa and the officials of the company, the former stating that defendant's invention was of no value, and the others that they did not understand it; that later during his leisure hours at noon and at home, he made drawings in detail, etc.; that he attempted to interest plaintiff in his invention and to satisfy the officers of its value so that plaintiff would purchase it from him. Defendant testified that a model was first made, but that after the joint was tested, it was shelved in the assembly room and left there. When Rzeppa applied for his last patent in 1933, he knew of defendant's discovery but made no mention of it in his claims. Later some joints in accordance with defendant's invention were made up by plaintiff in order to test their value and they proved successful. Finally when informed that plaintiff was interested in using his joint instead of Rzeppa's, defendant for the first time informed plaintiff's president that he had applied for a patent and demanded royalty or compensation for the use of his joint. A disagreement thereupon arose. Defendant left the employ of the company and entered into an agreement with another concern for the use of his patent. Shortly thereafter, plaintiff brought the instant suit in which it seeks to enjoin defendant from assigning his patent to others and also a decree compelling him to assign it to plaintiff. After a hearing, the trial judge entered a decree for defendant dismissing the bill.

The main question in the case is one of fact. Plaintiff makes no claim that defendant ever agreed to assign any inventions he might make to plaintiff. It, however, claims that defendant was employed to develop or invent a universal joint, and that he discovered an improvement in a constant velocity universal joint while developing the Rzeppa patent and while doing that which he was hired to do. There is no claim that defendant participated in any of the conversations between Rzeppa and plaintiff's officers in which the duties of defendant were outlined. The testimony on behalf of plaintiff that defendant was employed to develop the universal joint is indefinite and leaves considerable doubt as to what the exact understanding was. On the other hand, defendant emphatically denies that he was to do anything towards developing the universal joint. He positively asserts that he was employed solely as a high-grade draftsman charged with the duty of making drawings of the Rzeppa joint and particularly to adapt it to motor-driven vehicles of various manufacturers and to draw all the details so that it could be manufactured for use.

Defendant's positive testimony as to the limited scope of his employment is opposed to that of two witnesses for plaintiff. The question of credibility arises. We largely rely on the opinion of the trial judge who had an opportunity to see and hear the witnesses. *Eckenrode* v. *Motor Oil Corp. of America*, 275 Mich. 437. The trial judge found that defendant was only employed to do the work of a regular draftsman.

In coming to our conclusion that the trial judge was correct in deciding in defendant's favor, we also have examined the type of work that defendant actually did for plaintiff and conclude that it was

not in connection with the further development of the Rzeppa patents, but rather was solely in carrying out Rzeppa's idea, making drawings of the various sizes of the Rzeppa joint so that it could be properly manufactured and be used in the cars of various manufacturers.

Attention is called to the fact that while the written contract with Rzeppa obligated him to assign the use of further improvements on universal joints to plaintiff, no such agreement was exacted from defendant. On June 14, 1932, defendant addressed a note to the president of plaintiff company referring to his own invention, in which he stated the ''accompanying blueprint is my original design of the Rzeppa universal joint with an eccentric cage which eliminates the necessity of pilot pins and parts.'' Plaintiff stresses the fact that this reference to the Rzeppa joint indicates that defendant regarded his invention as a development of the Rzeppa joint. Other evidence as well as the testimony dispels this argument. In another memorandum in the interoffice correspondence, defendant's invention is referred to as the *Stuber* joint.

The record has been examined with care. While there may be some testimony that favors plaintiff's claim that defendant was hired to invent, we must conclude, as the circuit judge did, that plaintiff did not sustain the burden of proof imposed upon it. The case illustrates the advisability of reducing contract relations to writing where the parties contemplate that any invention made by an employee during the course of his work shall belong to the employer.

The law is well established. It is concisely stated in *Detroit Testing Laboratory* v. *Robison,* 221 Mich. 442, where we held that one hired as an expert chemist and analyst but not to exercise his inventive

genius, was entitled to retain a patent as his own property, notwithstanding the fact that in the development of the invention he used his employer's time and laboratory. Plaintiff, however, claims that that case is not applicable to the facts in the instant case. Though the facts slightly differ, the principle is the same. The rule is stated in *United States* v. *Dubilier Condenser Corp.,* 289 U. S. 178 (53 Sup. Ct. 554, 85 A. L. R. 1488), as follows:

"One employed to make an invention, who succeeds, during his term of service, in accomplishing that task, is bound to assign to his employer any patent obtained. The reason is that he has only produced that which he was employed to invent. His invention is the precise subject of the contract of employment. A term of the agreement necessarily is that what he is paid to produce belongs to his paymaster. *Standard Parts Co.* v. *Peck,* 264 U. S. 52 (44 Sup. Ct. 239, 32 A. L. R. 1033). On the other hand, if the employment be general, albeit it cover a field of labor and effect in the performance of which the employee conceived the invention for which he obtained a patent, the contract is not so broadly construed as to require an assignment of the patent. *Hapgood* v. *Hewitt,* 119 U. S. 226 (7 Sup. Ct. 193); *Dalzell* v. *Dueber Watch Case Manfg. Co.,* 149 U. S. 315 (13 Sup. Ct. 886). In the latter case it was said:

" 'But a manufacturing corporation, which has employed a skilled workman, for a stated compensation, to take charge of its works, and to devote his time and services to devising and making improvements in articles there manufactured, is not entitled to a conveyance of patents obtained for inventions made by him while so employed, in the absence of express agreement to that effect.'

"The reluctance of courts to imply or infer an agreement by the employee to assign his patent is due to a recognition of the peculiar nature of the act of invention, which consists neither in finding out the laws of nature, nor in fruitful research as

to the operation of natural laws, but in discovering how those laws may be utilized or applied for some beneficial purpose, by a process, a device or a machine. It is the result of an inventive act, the birth of an idea and its reduction to practice; the product of original thought; a concept demonstrated to be true by practical application or embodiment in tangible form. *Clark Thread Co.* v. *Willimantic Linen Co.,* 140 U. S. 481, 489 (11 Sup. Ct. 846); *T. H. Symington Co.* v. *National Malleable Castings Co.,* 250 U. S. 383, 386 (39 Sup. Ct. 542); *Pyrene Manfg. Co.* v. *Boyce* (C. C. A.), 292 Fed. 480, 481.''

We agree with plaintiff that if defendant had been employed to devise a new universal joint or make improvements in the Rzeppa joint, plaintiff would be entitled to an assignment of the patent. The law is stated in *Solomons* v. *United States,* 137 U. S. 342 (11 Sup. Ct. 88), as follows:

''If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer.''

Although the foregoing statement was criticized as being dictum, it has been repeatedly followed in subsequent cases and is a correct statement of the law. The rule thus stated does not apply to the facts in the instant case.

Some further claim was made that defendant's joint was merely an improvement on the Rzeppa joint. If defendant's joint is merely an improvement on the Rzeppa's joint, defendant concedes that he would not be able to use his patent without plaintiff's consent, for he would be infringing on the Rzeppa patent. The question of infringement, however, is not involved. Defendant's joint eliminated several parts found in the Rzeppa joint. It has been frequently held that the simplification of a mechan-

ism by the omission of several parts constitutes an invention and not a mere improvement, if the simplified mechanism accomplishes the same result as did the more complicated form. *Brown* v. *Huntington Piano Co.*, 67 C. C. A. 639 (134 Fed. 735) ; *Baldwin-Southwark Corp.* v. *Tinius Olsen Testing Machine Co.* (C. C. A.), 88 Fed. (2d) 910.

The decree of the trial court dismissing the bill is affirmed, with costs to defendant.

FEAD, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.