CHRISTIAN CHURCH OF TAMA, IOWA, v. E. S. CARPENTER, NATHAN HALL and HENRY SWARTZLANDER, Appellants.

**Departure from Creed:** TEST OF MEMBERSHIP: *Evidence.* A new pastor of a church taught new doctrines, and a well known leader of the faction professing them called on all who were willing to

accept the innovations to take the front seat; this being done expressly to settle misunderstandings as to belief. Shortly there-after, three leading members who refused to tolerate the new doctrines were notified to be at church and confess, or they would be expelled, and on their failing to do so, the elders dropped their names. No specific charges were given, though demanded; the pretext for the members' dismissal being that they were walking disorderly. *Held*, to show that the new doctrines were made the test of membership, though no formal resolutions were adopted.

**Religious Corporations:** TRUSTS: *Injunctions*. The property of a church must be held and used in trust for the promulgation of the generally accepted doctrines of that church, and members departing therefrom and causing a schism therein, will be enjoined from controlling or interfering with its management

RULE APPLIED. A faction in a church discarded an organ used in the service, discontinued the Sunday school, denouncing certain pamphlets used therein, rejected the practice of receiving aid from outside and taking up collections, adopted the method of voluntary offerings and proclaimed the rule of the elders in place of self-government. The new doctrines were made the test of membership. The former practices of the church were not contrary to anything in the new testament, which was the creed of the church, and were in accordance with the practices of the church generally. *Held*, that the new doctrines and practices were a substantial departure from the doctrines of the church, and their enforcement would be enjoined.

*Appeal from Tama District Court.*—HON. OBED CASWELL, Judge.

THURSDAY, MAY 25, 1899.

A CHRISTIAN Church was organized in Tama, in 1884, was incorporated in 1887, and acquired the church building in controversy. The defendants were enjoined from controlling the church, or from interfering with its use, by the trustees bringing the action and their associates, and appeal. —*Affirmed.*

*Caldwell & Walters* for appellants.

*Mills & Stinson* and *Willett & Huber* for appellee.

LADD, J.—Many of the matters argued by appellants require no attention, as we find they caused a schism in the

church, and insisted on the belief in doctrines differing substantially from those of the Church of Christ as a test of fellowship. Up to 1892, when their pastor, Cordner, died, the generally accepted doctrines of that denomination were taught; the Sunday school, in which were used the International Sunday School Leaves, prepared for the purpose of elucidating the Scriptures, flourished; an organ was played in the praise service; financial help was received from the Ladies' Aid Society; baskets were passed by the elders in taking up collections; the sacrament was administered after services; and the church had self-government. All this conformed with the practices of the Christian Church. Its creed is the New Testament. Our attention has not been called to anything therein inconsistent with the doings of this people. Nevertheless, with the advent of a new pastor all was changed. The International Sunday School Leaves and the organ were privately denounced as instruments of the devil. The Sunday school was abandoned, as not authorized by the Scriptures, though the youth were sometimes taught from the Bible. The organ was relegated to the wood house; and, notwithstanding David's words, "Praise Him with stringed instruments and organs" (150th Psalm), and the vision of the beloved disciple who "heard the voice of harpers harping on their harps" from the redeemed about the throne, the use of any musical instrument in the church, save the human throat, was declared not to be sanctioned by the Scriptures. Receiving contributions from outsiders was condemned, and voluntary offering made only by depositing the gifts on a stand before the altar. The rule of the elders was proclaimed. Disbelief in the use of the organ, in the Sunday school, the rule of the elders, and the methods of giving were made tests of fealty. True, no formal resolution was adopted. But such were the teachings of pastors employed, and insisted on by the leaders of this faction. Thus in December, 1894, E. S. Carpenter, called upon all who were willing to take the New

Testament as the guide of faith, cast aside all things not named therein, and abide by the rule of the elders, to so signify by taking the front seats. This was for the express purpose of settling misunderstandings as to belief, and his interpretation was well known to be in accord with the new teachings. Besides, this was brought out by failing to answer pertinent questions. Shortly afterwards three leaders of those who refused to tolerate the innovations were notified to be at church the next Sunday, and confess, or they would be expelled. Specific charges were demanded, but never made. Failing to attend, the elders, in absence of objection from the congregation, dropped their names from membership. The pretext for this was that they were walking disorderly, but wherein we have been unable to ascertain, except in that they rejected these teachings. But see *Helbig v. Rosenberg,* 86 Iowa, 159. Thus the testimony of the witnesses, to the effect that the doctrines of the appellants and their associates were made the test of fellowship, finds strong confirmation in their acts, and, we think, is fully established by the evidence, notwithstanding their denial. The main difficulty lies in fixing upon the doctrines of the Christian Church. These are based upon the true interpretation of the New Testament. But both parties rest on theirs as being that which should guide the "Disciples," as members of this church are often called. The evidence is without dispute, however, that the practices of the church prior to the death of Cordner were in accord with those of the church generally, and nothing in the Scriptures has been pointed out condemning them. The departures of the appellants and their associates may not seem of grave importance, but they were made the test of fellowship, and this it is evident must be regarded as substantial. The law applicable to such a case is not questioned. *Church v. Whitmore,* 83 Iowa, 138. The property must be kept in sacred trust for the promulgation of the doctrines of the New Testament according to the generally accepted interpretation of the Church of Christ.—*Affirmed.*