Bethany Congregational Church, Appellant, v. B. H. Morse, Appellee, Consolidated with Bethany Congregational Church, Appellant, v. Joe Hanisch, J. A. Highland, Jerolde Seitsinger, Andrew Lorenzen, Jr., and John McCune, Appellees.

**Appeal:** moot question. The mere fact that a plaintiff has been sued on a temporary injunction bond will not entitle him to appeal from a judgment dismissing the action, simply to have his liability on the bond determined.

**Same.** Where, pending litigation to restrain certain individuals from acting as trustees of a church society, their successors were duly chosen, the court on appeal from a judgment dismissing the action

will not undertake to determine the merits of the controversy, no property rights remaining unsettled.

**Judgments:** PLEADINGS: CONFORMITY TO EVIDENCE. The petition in an action by a church society against its pastor and some of the members for fraudulently conspiring to control the affairs of the church, and which showed that the pastor obtained control of the the church building and parsonage, drew a salary without legal right and enjoyed the use of the parsonage, and which simply asked for a decree setting aside the action of the pastor and those assisting him, did not authorize a judgment against the pastor for the amount of his salary and for the use of the parsonage

**Appeal:** SETTLEMENT OF CONTROVERSY: MOOT QUESTION. Where a church controversy forming the subject matter of a suit was settled pending the litigation, an appeal from a judgment dismissing the action, rendered after the trial court had arbitrarily and on its own motion continued the cause to enable the holding of a church meeting for the settlement of the controversy, presents but a moot question; and the court's order in apportioning the costs will not be disturbed.

**Religious societies:** JUDICIAL SUPERVISION. Final determination by church organizations of questions of discipline, faith, ecclesiastical rule or custom will be accepted by the courts as final and binding upon them.

*Appeal from Linn District Court.*—HON. W. N. TREICH-
LER, Judge.

WEDNESDAY, JULY 5, 1911.

THESE actions were brought separately in the court below, but were consolidated for the purpose of trial. The first was brought to restrain defendant Morse from acting as pastor of plaintiff, from using and occupying the property of the church, including the parsonage, and for other relief. And the second challenged the election of the defendants as trustees of the plaintiff church, and asked that they be restrained from interfering in any manner with the property of the church. Temporary restraining orders were issued and such proceedings had that the controversy

ended in the dismissal of the petitions, and plaintiff in each case appeals. *Affirmed.*

*Rickel, Dennis & Green,* for appellant.

*Crosby & Fordyce,* for appellees.

Deemer, J.—This is a peculiar and unfortunate controversy primarily between two factions of plaintiff church in the city of Cedar Rapids. Several actions have been brought, new elections of trustees have been held, and the main cause for disturbance removed through the resignation of defendant Morse as pastor. However, plaintiff insists that the proceedings of the trial court were wholly irregular, and that, notwithstanding all friction had been removed, it is entitled to press its appeal to this court that it may either have judgment for the amount of salary paid defendant Morse during the year 1909 and a part of the year 1910, and judgment for the use of the parsonage, or that it may have such a decree here, or in the district court, as will furnish the foundation for an action at law to recover these items.

I. It also says that it is entitled to a decree, for the reason that it has been sued upon the bond given to secure the temporary restraining order by defendant Morse, and

1. Appeal: moot question.

that it is entitled to have this case decided, in order to have liability on this bond determined. This last proposition is ruled, however, by *Horrabin v. Iowa City,* 130 N. W. (Iowa) 150.

As to the second action, it appears that when the case went to trial the original defendants were no longer serving as trustees of the church, their successors having in the meantime been chosen in the regular way,

2. Same.

and as this second suit was simply to restrain the defendants named therein from acting as trustees, from controlling or taking possession of the church

property, and from bringing any suits in the name of the plaintiff, it is perfectly manifest that aside from the question of costs there is nothing left for consideration save the moot question as to whether these defendants named were properly elected trustees of plaintiff church for the year 1909. That we do not consider such questions after the terms of such officials have expired, and no property rights remain to be determined, is settled by so many authorities that it seems useless to cite them. See, however, cases cited in McClain's Digest, vol. 1, pages 117, 118.

II. There remains but one question, and that is whether or not we should consider the first appeal, and, if so, what are the merits thereof. The first of these actions was to set aside and have declared void the proceedings of the church at its regular meeting held December 31, 1908, whereat defendant Morse was employed as pastor for the period of five years at a salary of $850 per year, including the use of the parsonage, and to have a decree that said defendant had no right to occupy the church or parsonage, or to take or receive any further sums of church money. The action was commenced on June 10, 1909.

*3. JUDGMENTS: pleadings: conformity to evidence.*

Defendant, on September 2, of the same year, filed an answer, from which we extract the following:

Defendant admits that he had made use of the parsonage of said church, but that the same was in pursuance of his calling and employment as pastor of said church, by a vote of 73 to 21. . . . Defendant avers that said church had consisted of two factions for more than ten years last past; that the majority of the members, numbering one hundred and fifty-four, supported the defendant, and are endeavoring to advance the interests of the church; that the other faction, consisting of about twenty-five members, have sought to run the church affairs, and had become dissatisfied because they were unable to have their own way in all matters, and for that reason they have instituted this action; that said lesser faction has not given financial support to the church since September, 1908, and a very

few have attended any church meetings since said date, but have sought by various ways to harass and annoy the other members of the church. Defendant further avers that the claims set out in plaintiff's petition were brought before and submitted to the Davenport Association of Congregational Churches, of which the plaintiff was a member, and that said association determined said claim in favor of the defendant herein. Further answering, the defendant further states that the allegations of the petition are not sufficient to entitle the plaintiff to the relief demanded, or any relief; that for more than six months prior to the commencement of this action, the defendant had been occupying said church parsonage ·as a residence with the knowledge and consent of the plaintiff, and of the members and officers thereof, and had therein all his household goods, furniture, clothing, and personal effects of himself and wife, and defendant denies all the allegations of said petition not in said answer admitted.

On the issues thus tendered, the case came on for hearing on the 20th day of December, 1909, and the parties, particularly the plaintiff, being present with its witnesses, the trial court made the following order, without the consent of either party:

It appearing from the pleadings and exhibits attached thereto, and statement of counsel and authorities cited that the question involved is, first, admission of members; second, the election of trustees; third, the election of a pastor, and it further appearing that the annual meeting of the church for election of officers shall be held December 31, it is ordered, and the congregation is hereby authorized, to be held by the constitution of said church, adopted May 29, 1893, and determine all matters in issue,· first, the admission of members; second, the election of trustees, and such other matters as may properly come before the same, and the church building may be used for the purpose of holding said meeting, and the congregation may hold services Christmas night, and cause shall be continued on the court's own motion.

To this order both parties excepted. Pursuant to this

order, the cause was continued and was again called at the succeeding January, 1910, term, and on the 26th day of that month.

In the meantime, however, and on January 18, 1910, defendant Morse with his codefendants filed an amendment to their answer, reading as follows:

That the Bethany Congregational Church of Cedar Rapids, Iowa, under the permission and direction of this court entered at the last term thereof, held its annual meeting for the election of officers in said church on the 31st day of December, A. D. 1909; that at said annual meeting the defendant, B. H. Morse, was elected pastor of said church by unanimous vote of said meeting; eighty-three ballots being cast in favor of his election and none against; that at said annual meeting the defendants, John Hiland, Jerolde Seitsinger, and Andrew Lorenzen, Jr., were elected trustees of said church; that the proceedings at said meeting were conducted under and in accordance with the provisions of the constitution of said church, adopted May 29, 1893, and in accordance with the direction of this court.

To this plaintiff demurred, but its demurrer was overruled. The case then came on for trial and the following proceedings were had:

This cause coming on for hearing, plaintiff in the above consolidated cases called up its witnesses, who were then in the courtroom, in the presence of the court, and asked that the same be sworn, and that plaintiff be allowed to examine the same in support of the allegations of the petitions in said consolidated cases. That the court, upon objection made by the defendants, sustained such objections, and they objected to the swearing and examination of such witnesses by plaintiff; and the court thereupon refused to allow said witnesses to be sworn, and refused to allow them to be examined in any manner in support of the allegations of the petitions in the aforesaid consolidated cases. That plaintiff thereupon offered to prove all the allegations of the petitions in said causes by witnesses then present in court, and asked that said witnesses be sworn, and that plaintiff be allowed to examine said witnesses in

support of all of the several allegations of said petitions; all of which the court refused, and to which refusal then and there plaintiff duly excepted, and to each ruling thereon. That plaintiff having been refused the opportunity of proving the various allegations of its petition, defendants were then allowed, as against plaintiff's objection and protests, to offer evidence in support of defendants' amendments to answers.

The testimony showed a meeting held in the regular way on December 31, 1909, the election of deacons, trustees, and other officers, and the selection of defendant Morse as pastor by unanimous vote for the term of one year. After the introduction of this record the court, without taking any further testimony, entered a decree from which we extract the following:

It appearing from the evidence that the members of the church met in pursuance to the order made herein at the November term, 1909, and elected officers substantially in the manner as provided by its constitution, this cause is dismissed, and under the present condition the temporary injunction is and should be dissolved; each party to pay their own witnesses and the expenses of subpoenaing the same; plaintiff to pay the other costs. Judgment accordingly, to which both parties except. An appeal bond fixed at three hundred dollars. Judgment is entered against plaintiff, the Bethany Congregational Church of Cedar Rapids, for the sum of $100, assessed and taxed as its witness fees and expenses of subpoenaing same, and execution issues therefor. Judgment is hereby entered against defendants B. H. Morse, Joe Hanisch, J. A. Hiland, Jerolde Seitsinger, Andrew Lorenzen, and John McCune, for sum of $75, assessed and taxed as their witness fees and expense of subpoenaing same, and execution issue therefor.

Such is the rather unusual record in this case. It is now shown, however, in a motion to dismiss the appeal, that defendant Morse resigned his pastorate on April 10, 1910; that his resignation was immediately accepted;

and that he (Morse) almost immediately left the state. It should also be stated that on June 12, 1909, a restraining order issued, enjoining defendant from acting as pastor of the church or from using or occupying the parsonage, or from in any manner using any of the church property. This injunction continued in force, save as modified in some slight particulars by agreement of parties, until the final decree, which was entered January 26, 1910. So far as shown, defendant Morse drew no salary and did not use the church property or parsonage from the time he was enjoined down until the final decree was entered in this case, and he is not now claiming to act as pastor. He doubtless received his salary for the short time which elapsed from his election in December, 1909, until his resignation in April of the year 1910. The inquiry now is, what is there left for decision? Surely, save for some collateral matters, simply the moot question as to whether defendant should have been permitted to act as pastor for the year 1909, and to have the use of the property and parsonage during that year, or rather for that part of it which passed before the restraining order was issued. Nothing else, it seems to us, is involved, save the order for costs, and as the trial court apportioned these and an appeal will not ordinarily, if ever, lie to settle a question of costs, there is no reason to consider the appeal, save as it may serve some collateral purpose already suggested, unless it be for the fact that plaintiff was entitled under the allegations of its petition to recover the salary paid to Morse from January to June, 1909, and rental for the parsonage during this period.

The only allegations in the petition with reference to these particular matters are the following:

Plaintiff further represents and shows upon information and belief that the defendant and other members of the church fraudulently entered into a confederation and conspiracy by which the entire management and control of

the church and its property should pass into the hands of the defendant as the pastor of said church, and subject to his direction and control, as well as fixing his own salary as pastor thereof. . . .

That at the annual church meeting held on the 31st day of December, 1908, the said defendant, in pursuance of his fraudulent and illegal purpose set out as aforesaid, and in combination with other members of said church, whom he succeeded in influencing, having called said meeting to order, acted as chairman of the meeting. The defendant then proceeded to read the names of fourteen members of the congregation. 'What shall we do with these men; they have paid no pastor's salary since September?' and charges were preferred against them on that account, although there was nothing in the constitution or rules of the church providing for any such course. When a motion was made that these men whose names were thus read should have a trial on the charges, the defendant refused to have the motion entertained, and declared that he would have no talk on the subject, and if they attempted to talk he would have them arrested and put in jail. Thereupon the said defendant stated that the members would be debarred from voting, and on a vote taken were declared debarred from voting. . . .

The plaintiff further represents and shows that said defendant, having by fraud, intimidation, and ignoring the law of the church, obtained control of said annual meeting, caused himself to be elected and chosen as pastor for the term of five years at an annual salary of eight hundred and fifty ($850) dollars in addition to the use of the parsonage. That in order to obtain such appointment and salary all of the provisions of the old constitution then in force were ignored. That his appointment was not subject to the vote of the trustees, as is provided in article 7 of said constitution. That at said meeting the said defendant was not recommended for the pastorate of said church by a joint committee of supplies, consisting of trustees and deacons, as is provided in sections 1 and 2 of article 9 of the said constitution, but, on the other hand, a majority of said trustees and deacons were opposed to recommending the defendant as pastor of said church, and are still so opposed, and have never recommended him

in any manner for such position at the annual meeting, or at any meeting held since that time.

Plaintiff further represents and shows that by the action of the defendant, as hereinbefore set out, he has obtained control of the church building belonging to the plaintiff herein and also the parsonage building belonging to the plaintiff herein, and is assuming the use, control, and direction thereof, and is occupying the parsonage, and is without any legal right or authority whatever, taking from the treasury of the plaintiff eight hundred and fifty ($850) dollars a year, as well as enjoying the use of said parsonage; and has declared his purpose to remain in control of the church edifice and continue to use and occupy the same, as well as the parsonage, and petitioner states that defendant will so continue to use the same and use said parsonage, unless he is restrained from so doing by the orders of this court. . . .

Wherefore plaintiff prays that a decree be entered herein, setting aside the action taken and caused to be taken by defendant, and those assisting him, at the annual meeting held December 31, 1908, whereby the constitution and rules of the plaintiff were set aside, and others enacted in lieu thereof, and other officers attempted to be elected; and also the action of said meeting employing defendant as pastor of plaintiff for a period of five years at a salary of eight hundred and fifty ($850) dollars per annum, including the use of the parsonage; and declaring the various actions taken at said annual meeting to be null and void; and decreeing that said defendant has no legal right or authority to officiate as pastor of plaintiff, or use or occupy the church building or parsonage building, or to take or receive any further sums of church money.

Plaintiff further prays that a preliminary writ of injunction issue herein directed to defendant, commanding and restraining him from further acting as pastor of plaintiff's church, or from using or occupying its church building as a pastor, and from using or occupying the parsonage connected with said church; and further that he be enjoined and restrained by said writ from in any manner interfering with any of plaintiff's property in any manner; and that upon final hearing hereof said injunction be made perpetual; and that plaintiff have such

other and further relief as to this court may seem just and equitable.

It seems to us that under these allegations plaintiff would not have been entitled to receive any rental, either for the church or the parsonage, and that a judgment for the return of the money paid defendant as pastor would have been outside of the issues. With the vexed question as to the power of the courts over ecclesiastical matters we do not think it necessary to deal. The real questions in the case, if there be any, relate to procedure and as to what shall be done with an action after the real issues have been settled, although adjusted during the pendency of the proceedings.

The trial court was arbitrary in ordering the continuance of the case on its own motion. But it appeared when the action was reached for trial that in a few days the regular meeting of the church would be held, and that at this meeting such proceedings might be had as would settle the controversy more speedily than the court could do. In such circumstances we are not disposed to reverse the trial court, in order that a trial may now be had of issues which are entirely dead. Under the allegations of the petition, there does not appear to have been any division of the church membership over articles of faith, creed, or doctrine. The matter was largely personal, and the storm center was about the pastor. His following seemed to be in the majority, so much so that they controlled at elections and by virtue of the force of numbers had their way. They elected their own officers, changed by-laws when they stood in the way, and retained defendant Morse as pastor. The body which called or employed Morse was at least a *de facto* one, and was not one which had departed from the faith. With such matters courts are slow to interfere. Even were all the allegations made against the erstwhile pastor shown to be true, it nevertheless ap-

4. APPEAL: settlement of controversy: moot question.

pears that he still had a majority of his parishioners with him.

The general rule as to the power of the courts in such cases has thus been stated:

Our only judicial power in the case arises from the conflicting claims of the parties to the church property and the use of it. And these we must decide, as we do all other civil controversies brought to this tribunal for ultimate decision. We can not decide who ought to be members of the church, nor whether the excommunicated members have been justly or unjustly, regularly or irregularly cut off from the body of the church. We must take the fact of expulsion as conclusive proof that the persons expelled are not now members of the repudiating church; for, whether right or wrong, the act of excommunication must, as to the fact of membership, be law to this court. . . . Having once associated themselves with many others, as an organized band of professing Christians, they thereby voluntarily subjected themselves to the disciplinary and even expulsive power of that body. The voice of the majority has prevailed against them. They by that fiat ceased to be members of that association, and with the loss of their membership they have lost all the privileges and legal rights to which, as members, they were ever entitled. Their only remedy is, therefore, in their own bosoms, in a consciousness of their own moral rectitude, and in the consolations of that religious faith and those Christian graces which, under all temporal trials, will ever sustain the faithful Christian and adorn the pathway of his earthly pilgrimages.

5. RELIGIOUS SOCIETIES: judicial supervision.

*Hendryx v. People's United Church,* 42 Wash. 336 (84 Pac. 1123, 4 L. R. A. (N. S.) 1154); 7 Am. & Eng. Ann. Cas. 764; *Shannon v. Frost,* 3 B. Mon. (Ky.) 253.

Justice Miller of the United States Supreme Court said in *Watson v. Jones,* 13 Wall. 679 (20 L. Ed. 666): "In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our

system of laws, and supported by a preponderating weight of judicial authority, is that, whenever the questions of discipline or faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them in their application to the case before them." See, also, *Sale v. Church,* 62 Iowa, 26; *Duessel v. Proch,* 78 Conn, 343 (62 Atl. 152; s. c., 3 L. R. A. (N. S.) 854)· and note; *Mt. Zion Church v. Whitmore,* 83 Iowa, 138.

Conceding *arguendo* that the trial court was somewhat arbitrary in its rulings, the fact remains that there is little or nothing left to quarrel over, and it is better for all concerned that this controversy be ended as speedily as possible. We reach the conclusion that the trial court did not err in its final decree, and that, in view of the resignation of the pastor and his departure to more congenial fields, there is nothing left to quarrel over, save a question of costs. As these were apportioned by the district court, we are not disposed to make any modification of the order with respect thereto. We are not to be understood as holding that the injunction was not rightfully sued out in the first instance; upon that proposition we express no opinion at this time, for it is not necessary that we do so. Nor is it expedient that we in any manner prejudge any future actions.

No reversible error appears, and the judgments and decrees must be, and they are, *affirmed.*