**GEMCO ENGINEERING & MFG. CO., INC., Plaintiff-Appellant,. v HENDERSON ET, Defendants-Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 6791. Decided October 20th, 1947.

James H. Cleveland, Cleveland, and Truman A. Herron, for plaintiff-appellant.

Long & Bloom and Frank Zugelter, Cincinnati, for defendants-appellees.

## OPINION

By HILDEBRANT, J.

The Court is required here to determine on trial de novo the respective rights and obligations of the parties in two inventions and patents thereto, made by the defendant while in the employ of the plaintiff.

Plaintiff claims complete title and ownership of the inventions and patents by virtue of a contract of employment to invent, and, in the alternative, full shop rights to use, manufacture, and sell.

Defendant denies any right of ownership in the plaintiff to the inventions and patents except a bare shop right to use the first invention in the course of its own business.

Plaintiff seeks a declaration of its rights and coercive relief appropriate to perfecting its title and ownership.

As in all such cases decision depends upon the facts to be found from the evidence.

The burden of proof is upon the plaintiff.

As to proof of a contract of employment to invent, bringing the case within the rule laid down in Standard Parts Co. v Peck, 264 U. S. 52, the record reveals a sharp conflict in the evidence and the court has no difficulty in finding that the burden of proof resting on the plaintiff has not been met. We are, therefore, remitted to a consideration of shop rights, if any, and the scope thereof to be determined from the entire situation of the parties, including the nature of the employer's business, the character of the invention involved,

the circumstances which created them, and the relation, conduct, and intention of the parties. See: Flannery Bolt Co. v Flannery, 86 'Fed. (2d) 44.

In September, 1945, plaintiff company was in a transition period from the manufacturing of war materials to peace time products, including a "utility trailer," and was seeking new products to utilize the substantial facilities of its plant to a better advantage. Defendant on the payroll of another company at $100 per week was seeking to exploit commercially a patented invention of a trailer hitch, owned jointly by defendant and two others. He succeeded in interesting the plaintiff in the adaptation of the "Henderson Hitch" to plaintiff's utility trailer, and spent all of his time from September, 1945, while still on the other payroll, until November, 1945, assisting in plaintiff's plant in conjunction with the plaintiff in adapting the "hitch" to the "utility trailer" and, further, in the development of a "jeep wagon" with which to utilize the "hitch" in connection with a "jeep." This development became assured during the month of November, 1945, and on November 22nd, 1945, defendant became an employee of the plaintiff at $75 per week. The oral agreement of employment entered into between the parties at this time, plaintiff claims, was for the defendant to "dream up new ideas" for plaintiff in its plant and was tantamount to an employment to invent. Defendant denies this specifically and claims he had no regular duties, but was to further the manufacture and adaptation of his "hitch" to plaintiff's trailer products and to demonstrate the same, which he subsequently did in conjunction with other employees of the plaintiff, both within and without the plaintiff's plant.

While so employed and early in January, 1946 defendant, noting the time involved in mounting tires in plaintiff's plant, volunteered to construct a tire mounter and received permission and cooperation of plaintiff in labor and material to so do. The model produced was a success, and having apparent commercial value it was exhibited to, among others, representatives of the Standard Oil Company. During the discussions and exhibitions created by the tire mounter, it became apparent to all parties that a tire demounter would be of even more commercial value than a mounter and it was suggested to defendant that he try to create a demounter. The evidence is in conflict as to who first conceived the idea of a demounter.

Plaintiff caused a patent search on the mounter to be made by its own attorneys, and their report being unsatisfactory to the defendant, he consulted a patent attorney of his own choice.

In the meanwhile, defendant was devoting some of his time to work on a demounter and received some aid and assistance in the plaintiff's plant.

Shortly after consulting his own patent attorney, defendant ceased all work on a demounter in plaintiff's plant and removed the model mounter and continued his work on the demounter in his own home. The evidence is in conflict as • to any help or connection with the work in defendant's home on the part of plaintiff.

Thereafter, defendant Henderson assigned to defendant Kavel a 30% interest in his inventions and patent applications.

In April, 1946, defendant's salary was raised to $100 a week.

No agreement subsequent to the oral contract of employment was made by the parties, although after the model tire mounter was completed, the parties were in more or less constant negotiations looking to an agreement, and after defendant Kavel came into the picture, both parties attempted by their conduct to indicate a claim of ownership to the inventions.

Also, there seems to be a conflict as to whether the demounter is an attachment on the mounter or a separate invention, and as to changes in the model mounter.

On this state of the record the case of U. S. v Dubilier Condenser Corp., 289 U. S., 178, would seem to be decisive of the case at bar. At pages 188-189 therein it is stated:

"The reluctance of courts to imply or infer an agreement by the employee to assign his patent is due to a recognition of the peculiar nature of the act of invention, which consists neither in finding out the laws of nature, nor in fruitful research as to the operation of natural laws, but in discovering how those laws may be utilized or applied for some beneficial purpose, by a process, a device or a machine. It is the result of an inventive act, the birth of an idea and its reduction to practice; the product of original thought; a concept demonstrated to be true by practical application or embodiment in tangible form. Clark Thread Co. v Willimantic Linen Co., 140 U. S. 481, 489; Symington Co. v National Castings Co., 250 U. S. 383, 386; Pyrene Mfg. Co. v Boyce, 292 Fed. 480, 481.

"Though the mental concept is embodied or realized in a machanism or a physical or chemical aggregate, the embodiment is not the invention and is not the subject of patent. This distinction between the idea and its application in practice is the basis of the rule that employment merely to design

or to construct or to devise methods of manufacture is not the same as employment to invent. Recognition of the nature of the act of invention also defines the limits of the so-called shop-right, which shortly stated, is that where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a non-exclusive right to practice the invention. McClurg v Kingsland, 1 How. 202; Solomons v United States, 137 U. S. 342; Lane & Bodley Co. v Locke, 150 U. S. 193. This is an application of equitable principles. Since the servant uses his master's time, facilities and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances in his business. But the employer in such a case has no equity to demand a conveyance of the invention, which is the original conception of the employee alone, in which the employer had no part. This remains the property of him who conceived it, together with the right conferred by the patent, to exclude all others than the employer from the accruing benefits. These principles are settled as respects private employment."

It appearing from the record that defendant Henderson was fully aware of plaintiff's need for new items to manufacture, and that plaintiff's interest in the mounter went beyond the mere use for mounting tires in its own plant and extended to the manufacture and commercial exploitation of the same, the scope of any shop-right therein is determined by that situation existing between the parties here.

We, therefore, conclude that title to the inventions and patents is in the defendant Henderson, subject to any lawful assignment thereof, and that plaintiff has a non-exclusive shop-right in both the tire mounter and demounter inventions, or the combined invention of the two, coextensive with its business requirements to make, use, and sell the same.

A decree may be presented accordingly.

MATTHEWS, PJ., ROSS & HILDEBRANDT, JJ, concur.