BANDAG, INCORPORATED, appellant, v. GERHARD MORENINGS, appellee.

No. 52017.

DECEMBER 13, 1966.

Robert A. VanVooren and Lane & Waterman, all of Davenport, for appellant.

Ronald L. Carlson and Betty, Neuman, McMahon, Hellstrom & Bittner, all of Davenport, for appellee.

MASON, J.—Plaintiff's equity action seeks a decree of ownership to a formula and process for an adhesive to bond poly-

urethane to natural or synthetic rubber, which formula and process are in the possession of defendant, a former employee. Plaintiff sought a temporary injunction during the pendency of the action and a permanent injunction against defendant's utilizing in any manner certain books, records, charts and formulas in his possession which plaintiff claims to own.

After trial the court dismissed plaintiff's petition, set aside the temporary injunction and released the documents in question, previously deposited with the court, to defendant. Plaintiff appeals.

I. The appeal presents the legal question, Under what circumstances does the law award to the employer or the employee the right and title to an invention, process or formula discovered or developed by the employee during the course or term of his employment?

Plaintiff, an Iowa corporation with home offices in Muscatine, is engaged in automobile tire recapping and as a part of such operation has devoted time, research and experimental work pertaining to the use of polyurethane in the recapping process. Apparently one of the problems involved in the tire recapping business is the development of a satisfactory "bonding" or "adhesive" agent in the process of bonding artificial rubber compounds, such as polyurethane, to old or synthetic rubber. We are told polyurethane is a rubberlike chemical compound used under various trade names in the chemical industry to provide a durable wearing surface to tires to be recapped; that the industry has experienced difficulty in finding an adhesive or bonding agent which will hold the old tire carcass to the new polyurethane tread; that there has been considerable research and experimentation on the problem without satisfactory results.

Defendant, a native of Germany, was originally employed in September 1958 by plaintiff as a common laborer. He had had no training in chemistry but obtained chemistry books written in German from his brother in Germany and began to study nights to prepare himself for his responsibility at plaintiff's plant. Two years after starting work as a laborer defendant developed a proficiency in chemistry.

During his employment as a laborer he realized plaintiff's products were not properly developed and there was a need for quality control consisting of testing each batch of rubber processed at plaintiff's plant. Defendant was sent to Akron, Ohio, at plaintiff's expense to take a four-day course in the handling of rubber testing equipment. Upon his return he began working on quality control where he did all the testing of each batch of rubber processed at the plant as well as raw materials furnished by other companies.

Later defendant was placed in charge of plaintiff's laboratory as chief chemist, a position he held until termination of his employment in January 1964. While in plaintiff's employ he developed many processes but at no time asserted a claim of ownership to these. The most significant process developed was a calendered bonding agent which adhered tread rubber to tire carcasses, which defendant perfected in late 1960 or early 1961. Plaintiff patented it.

Part of defendant's function in research and development for plaintiff was to bring forth new ideas for its use. In this connection he maintained a project book which at time of trial contained 18 itemized projects in the index. Defendant concedes 17 were company projects worked on by him while head of research and development. The dispute is over project 12 (the polyurethane application) which defendant claims to own. This project, written in Greek in the book, is also listed among the projects appearing in plaintiff's research program (exhibit 20), both in defendant's handwriting.

The value or efficiency of the formula for the bonding agent or material claimed to have been invented or produced by defendant is not in issue. It is conceded the utilization of the polyurethane application would improve plaintiff's position in the market.

II. The parties did not have a written contract regarding the assignment of inventions to plaintiff by defendant.

The gist of plaintiff's action is alleged in paragraph five of its amended petition: "On or about April of 1961 defendant was given the specific assignment by plaintiff to head its research and development for uses of polyurethane as it related

to plaintiff's business, specifically including the development of a process for bonding polyurethane to rubber and/or synthetic rubbers, with specific understanding that the development of this process, when perfected, would be utilized by plaintiff in its new products field."

Plaintiff seeks the exclusive title to the polyurethane formula or process.

Defendant's answer denies each of these allegations.

The burden of proof of plaintiff's ownership of defendant's formula by virtue of the alleged contract of employment is on plaintiff. Gemco Engineering & Manufacturing Co., Inc. v. Henderson, 82 Ohio App. 324, 77 N.E.2d 742, 743, modified on other grounds 151 Ohio St. 95, 84 N.E.2d 596.

The trial court found plaintiff had failed to carry the necessary burden and concluded that no contract, either express or implied, ever existed with defendant under which it was incumbent upon him to devote his entire time and skills in the attempt to discover or formulate a bonding agent which would do the work required in connection with the application of polyurethane to tire carcasses.

III. Plaintiff assigns a number of propositions relied on for reversal which we will not detail except as we find necessary in arriving at our decision.

Plaintiff's appeal is based on the contention the court misapplied the appropriate governing rule; the findings of fact are inconsistent with the testimony; the conclusions of law are inconsistent with the findings of fact; and the court failed to give consideration to testimony of Lynn Harbison, the only independent nonparty witness testifying.

IV. Our review of this equitable action is de novo. Rule 334, Rules of Civil Procedure. We give weight to the fact findings of the trial court but are not bound by them. Rule 344(f)7, R. C. P.

V. "In the absence of special agreement to the contrary, an invention and a patent secured for it belong to the inventor, even though the invention was made during the period of his employment, and the invention relates to the matter in which the inventor was employed." 4 Williston on Contracts,

Revised Ed., section 1025A.

To the same effect is the following statement in 56 C. J. S., Master and Servant, section 73a:

"In the absence of an express or implied agreement as to the ownership of inventions of the employee, the employer from the mere fact of a general employment has no exclusive rights to the inventions of his employee, even though in order to perfect his invention the employee uses his employer's property."

In Restatement, Second, Agency, section 397, it is said:

"Unless otherwise agreed, a person employed by another to do noninventive work is entitled to patents which are the result of his invention although the invention is due to the work for which he is employed."

In comment "a" on this section it is stated:

"A person who has discovered a principle or device for which a patent is issued is entitled to the ownership of the patent unless, at the time of the employment or subsequently, he agrees to convey it to another. Such an agreement may be found in specific terms in a contract of employment or from the circumstances surrounding the employment, the nature of the work done, and the relations of the parties during the employment. For the employer to be entitled to a patent it is not necessary that the contract should specifically so provide. Whether or not the inventions of the employee are to belong to the employer is a question to be decided upon all the facts of the individual case. There is no inference from the mere fact of employment that an employee agrees that his employer is to own patentable ideas which are discovered in the course of or as a consequence of the work which the employee is employed to do. This is true although the employee uses the tools and facilities of the employer in developing the idea. * * *

"The fact that an employee uses time which he should have devoted to his employer's affairs in perfecting a patent does not entitle the employer to the patent. This is true even though, in addition, the employee has used improperly the employer's tools."

 The contract need not be in writing or contain formal

words of agreement. 56 C. J. S., Master and Servant, section 73b. Nor need the contract be express anymore than any other contract. E. F. Drew & Co. v. Reinhard (1948, 2 Cir. N. Y.), 170 F.2d 679, 682.

■ The respective rights and obligations of employer and employee, touching an invention conceived by the latter, spring from the contract of employment. United States v. Dubilier Condenser Corp., 289 U. S. 178, 187, 53 S. Ct. 554, 77 L. Ed. 1114, 1118.

■ Courts are reluctant to infer or imply an agreement by an employee to assign patents to the employer due to a recognition of the peculiar nature of the act of invention. 35 Am. Jur., Master and Servant, section 90. The reason for this reluctance is well stated in United States v. Dubilier Condenser Corp., supra, 289 U. S., at 188, 53 S. Ct. 554, at 557, 77 L. Ed., at 1119:

"The reluctance of courts to imply or infer an agreement by the employee to assign his patent is due to a recognition of the peculiar nature of the act of invention, which consists neither in finding out the laws of nature, nor in fruitful research as to the operation of natural laws, but in discovering how those laws may be utilized or applied for some beneficial purpose, by a process, a device or a machine. It is the result of an inventive act, the birth of an idea and its reduction to practice; the product of original thought; a concept demonstrated to be true by practical application or embodiment in tangible form" (citing cases). Cited with approval in Gear Grinding Mach. Co. v. Stuber, 282 Mich. 455, 276 N.W. 514, 517.

VI. Plaintiff contends the rule controlling here is that found in Restatement, Second, Agency, section 397, comment "a":

"If, however, one is employed to do experimental work for inventive purposes, it is inferred ordinarily, although not so specifically agreed, that patentable ideas arrived at through the experimentation are to be owned by the employer. This is even more clear where one is employed to achieve a particular result which the invention accomplishes," and as substantially

repeated in 35 Am. Jur., Master and Servant, section 91.

While conceding that at the time of defendant's employment he was merely a common laborer and so continued for at least two years, plaintiff says he was subsequently particularly assigned the task of discovering or inventing a formula for a bonding agent which could be used in the application of polyurethane to a tire carcass. Plaintiff argues the key period of time is the relationship which existed at the time the formula was discovered and that according to defendant's evidence this was late 1963. It cites in support of this contention the following from Houghton v. United States (1928, 4 Cir.), 23 F.2d 386, 390:

"It matters not in what capacity the employee may have originally been hired, if he be set to experimenting with a view of making an invention, and accepts pay for such work, it is his duty to disclose to his employer what he discovers in making the experiments, and what he accomplishes by the experiments belongs to the employer."

While we agree with plaintiff's contention that the time the formula was discovered is the key period for determining the rights of the parties to the formula and ordinarily where an employee by contract, oral or written, is hired to make a particular invention or solve a particular problem for the employer, under certain circumstances the property in the inventions or creations of the employee belong to the employer, this contention, however, assumes the existence of a contract. As stated in Division II, supra, the trial court concluded no contract, either express or implied, ever existed between the parties. This conclusion finds support in the testimony of Roy Carver, plaintiff's president that it "has no contract of any kind with Mr. Morenings or any employees obligating the employee to turn over anything to the company which he developed on his own time or off hours."

The trial court felt in the absence of any contract or agreement between the parties, the principles enunciated in Restatement, Second, Agency, section 397, and 35 Am. Jur., Master and Servant, section 90, would be applicable in determining the respective rights of the parties to the formula rather

than the rule asserted by plaintiff in this division. We quote from the rule appearing in 35 Am. Jur., Master and Servant, supra:

"It is difficult to formulate as well as to apply any general rule governing respective rights as between employer and employee to inventions of the employee and to patents which have resulted from his discoveries and inventions. These rights spring from the contract of employment. It may properly be said that the law, while giving the employer the benefit of all the employee's mechanical skill, does not regard the ordinary contract of employment as including a right on the part of the employer to the products of the inventive genius of the employee, but the parties may contract that the employer shall be entitled to inventions made by the employee, or the terms of the contract may be such that such a stipulation will be implied. In any case, the terms of the contract are to be referred to, primarily, in determining the dispute as to the relative rights of the parties.

"It is a well-settled general rule that the mere fact of the relationship of employer and employee does not necessarily entitle the former to inventions made by the latter along the line of or related to the particular employment; and a contract to assign or transfer to the employer the patent, or whatever other rights the employee may have in the invention, as distinguished from a mere license to use the same, is not to be implied in law merely from the relation of the parties. * * * If, however, the employment is general, even though it covers a field of labor and effort in the performance of which the employee conceives an invention for which he obtains a patent, the contract of employment is not so broadly construed as to require an assignment of the patent to the employer."

In Dalzell v. Dueber Watch Case Mfg. Co., 149 U. S. 315, 326, 13 S. Ct. 886, 890, 37 L. Ed. 749, 755, it is said:

"The contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be precise as that neither party could reasonably misunderstand them. * * * So this court has said that chancery will not decree specific performance, * * * 'unless the proof is clear and satisfactory, both as to the existence of the agreement and as to its terms.' "

VII. In reaching its decision the trial court relied heavily on Pressed Steel Car Co. v. Hansen, 137 F. 403, 2 L. R. A., N. S., 1172, also cited by defendant. There suit was brought by the plaintiff-company against an employee to compel the assignment of six applications for patents made by him. The employee was plaintiff's chief engineer and the company contended it was a condition of his employment that all designs, inventions and improvements he might make while in its employ should become the sole and exclusive property of the company. While performing his duties as chief engineer the employee made the inventions in question. A fact much relied on by the company was that on numerous prior occasions inventions made by the employee had been transferred to the company. The employee explained this by stating he was very young when first employed and was grateful to the company and its predecessor which first employed him. Out of good feeling and as a matter of routine, he regularly assigned patents to the employer. As to the inventions in dispute, he contended these were worked out at his own home.

"The case, as stated by the court below, involved three inquiries: First, whether any express contract by Hansen to transfer the patents to complainant was proved to have been made; second, whether the facts proven were such as to warrant a presumption that a contract existed; and third, whether the contract to transfer is to be implied in law from the relation between the parties." Pressed Steel Car Co. v. Hansen, supra, 137 F. 405, 2 L. R. A., N. S., 1175.

At page 406 of 137 F., page 1178 of 2 L. R. A., N. S., the opinion of the court states:

"The important question remains, whether, from the relation of the parties, there resulted to the complainant, as a conclusion of law, such an equitable title to the entire patent monopoly, as would make enforceable a conveyance of the legal title. It should be borne in mind that what the bill claims is the whole and exclusive title to these inventions, and the patents therefor, and the only relief prayed would, if granted, convey the entire property right and monopoly of these inventions to the complainant, stripping the defendant of all right therein. It is

not sought by complainant to establish a shop right, or irrevocable license, for the manufacture and sale of the inventions covered by the patents, or any less interest than the whole and exclusive property right therein, and it is as to the existence of a specific contract to convey such entire interest that the court below found there was a failure of proof, direct or circumstantial. Notwithstanding, complainant contends that, in the absence of express understanding or agreement, the relation of employer and employee, as established by the facts of this case, did, as a legal consequence, carry absolute ownership and title in the monopoly of these patents to the complainant company, to the exclusion of all right of the defendant therein."

Starting on page 407 of 137 F., page 1179 of 2 L. R. A., N. S., the court continues:

"We do not think there is any justification for this contention in the facts disclosed by the record, * * *. Whether the complainant would have been justified in claiming what is called a shop right or a right to a license, irrevocable or otherwise, in regard to Hansen's inventions, is not the question raised by its bill. The claim is for the whole and exclusive title, and the demand is for a legal assignment of the same. A claim and demand so drastic as this, has no basis in the facts disclosed in this record."

The court then proceeds to a consideration of authorities, including Solomons v. United States, 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667, strongly relied on by plaintiff here, commenting at page 413 of 137 F., 1183 of 2 L. R. A., N. S., as follows:

"* * * In the Solomons Case, no question of the right of the employer to own or have a conveyance of the entire patent monopoly was raised or discussed in either the circuit or the Supreme Courts. The only right discussed was, as we have seen, the property right of the employer in the use of the invention in the line of its own business.

"Granting the contention of complainant's counsel, however, that Mr. Justice Brewer, in the language above referred to, meant to assert that the employer acquired the entire property right in the invention and patent of the employee, it is manifest that such assertion must be confined to the case, as stated, where

'one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result.' This is the statement of an express contract between employer and employee. The employee, by acceptance of such employment at a stated compensation, has contracted to devise a specific thing for his employer. This may, under circumstances, be equivalent to an express agreement to assign the patent for his invention to his employer, but that this cannot be predicated of the general relation of employer and employee is manifest from the numerous cases that have been cited, as well as from the Solomons Case itself, and in the case at bar there is a specific finding of fact by the court below, that no express contract is proven, and none is to be inferred from the facts in the case."

It must be kept in mind plaintiff had no custom, practice nor rules requiring employees to assign to it any inventive ideas formulated during the term of their employment, as was found in Marshall v. Colgate-Palmolive-Peet Co. (1949, 3 Cir. Del.), 175 F.2d 215, 217.

█ VIII. In arguing one assignment plaintiff asserts "the conduct pursued by the parties conclusively shows there was an implied contract whereby defendant was to assign all new processes, formulas and inventions to plaintiff." One difficulty with this is that plaintiff pleaded an express contract. "We have held many times that one who pleads an express oral contract cannot ordinarily recover upon an implied contract" (citing cases). Guldberg v. Greenfield, 259 Iowa 873, 878, 146 N.W.2d 298, 301. But, as there, we are not content to rest our holding here on the proposition plaintiff did not plead an implied contract with defendant.

█ We have considered each assignment relied on by plaintiff for reversal but fail to find circumstances which the law requires for awarding to an employer the right and title to a process or formula discovered or developed by his employee during the term of his employment. The trial court's action in dismissing plaintiff's petition and setting aside the temporary injunction is—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting, and STUART, J., who takes no part.