THIRD MISSIONARY BAPTIST CHURCH OF DAVENPORT, Iowa, a corporation and Flynn R. Griffin, Appellees,

v.

Alfred A. GARRETT, Alfred B. Newman, Rosabel Sample, Frank Camp, C. E. Randell, Appellants.

No. 52927.

Supreme Court of Iowa.

May 7, 1968.

Betty, Neuman, McMahon, Hellstrom & Bittner, by Ronald L. Saylor, Davenport, for appellants.

Henry T. McKnight, Des Moines, for appellees.

RAWLINGS, Justice.

Action in equity by Third Missionary Baptist Church of Davenport, Iowa, a corporation, and an individual member of the congregation, to require allegedly deposed defendant members of church and board of trustees to account for and turn over assets of the organization to claimed newly elected successor officers. Trial court granted relief requested and defendants appeal. We affirm.

Third Missionary Baptist Church of Davenport, hereafter sometimes referred to as the church, is a congregational, self-governing, autonomous organization. It has no written rules, bylaws or regulations, governed only by articles of incorporation and New Testament. The pastor is moderator of all meetings, and will of the membership controls.

Arguendo the "right hand of fellowship", with all privileges as voting members, is accorded every person when baptized and fellowshipped, children included.

Problems apparently not presented in the case at bar were discussed with Pastor Patton during the fall of 1964 and spring 1965. These issues were submitted to the

congregation during the April 23, 1965, quarterly meeting. The minister then purged the church of all under 21 and any who had not communed for the prior three months. Confusion resulted and the session adjourned by the pastor without action on matters called up by the members for consideration.

Advance announcements were made two separate Sundays prior to the June 4, 1965, membership meeting to the effect all church business would be considered at that session. Shortly after it convened request was made for a vote to determine whether the pastor should be retained. Again there was confusion and Reverend Patton adjourned the meeting. One of the persons present immediately asked those in attendance to remain so there could be a vote on retention of the minister. Some people walked out but about 75 or 80 remained. The preacher's wife started playing a piano and he began singing, in an attempt to interrupt proceedings. However, as best we can determine, it appears a majority of those present voted to remove him from the pastorate.

Subsequently the minister was asked to meet with the deacon board, but he refused.

June 26, 1965, there was a duly called meeting of church affiliates. It was opened by the pastor, but presided over by E. L. Dillard, a Baptist moderator. About 300 people were in attendance, all seats being occupied, with some standing.

Dillard announced a standing vote would be taken on whether to retain Reverend Patton. Request was made, but denied, for a roll call and secret ballot. The acting mediator apparently refused to recognize those opposing retention of the minister. There followed loud discussion and complete confusion. As a result two policemen entered and ordered everyone to sit down or leave. Some in attendance departed. There is a conflict in the evidence as to number of people remaining. However, the record discloses Bobby Leon Ray testi-

fied to the effect he acted as a counter, and with 15 or 20 children included, 149 people were present and voted. This is his testimony on cross-examination:

"Q. Did you check the names of those people against the roll of the church? A. No, I didn't.

"Q. Do you know all the members of the church? A. No, I don't.

"Q. How do you know whether or not those people who were standing were members? A. Because Deacon James Simmons followed the counters as a move to counteract anybody that shouldn't have been counted by instruction from the board.

"Q. Did he have a copy of the roll with him? A. I don't know.

"Q. Did you challenge anybody as not being a member? A. No. I didn't."

Alfred A. Garrett, Alfred B. Newman, Rosabel Sample, Frank Camp, trustees, and C. E. Randell, general treasurer, were unanimously voted out of office.

Following that action Flynn R. Griffin, individual party plaintiff, and four others were elected to replace the deposed officers.

July 19, 1965, defendants in this case, sought by civil action (#48554) to restrain the new board from dealing with property of the church. Defendants in that proceeding asked an accounting and surrender to them of all assets of the parish. Trial court ultimately held the matters involved were ecclesiastical, it had no jurisdiction, and dissolved a temporary injunction previously issued. Order of dismissal was entered. No appeal was taken.

August 5, 1965, Garrett and his friends, unable to gain access to the church, assembled in Garrett's backyard, voted Griffin and associates out of office, then reinstated the Garrett group. New church rules and regulations generally relating to membership and expulsion were adopted.

August 6, 1965, a previously announced covenant meeting was held in the church. It is claimed about 80 people, some under 18, were in attendance at this session, but no count was actually made. In any event, those present were advised the deacons recommended all who had not been supporting the church by participation and financial aid be purged. A voice vote resulted in expulsion of 150 or more members, for the most part unidentified. Without question, however, defendants were among those removed from the roll. Apparently, all not present at that meeting were expelled.

September 15, 1965, the case with which we are here concerned was commenced.

Propositions urged by defendants in support of reversal are, trial court erred in holding, (1) plaintiffs' action not barred under the rule of res judicata; (2) proceedings during the August 5, 1965, Garrett backyard meeting, removing defendants from the board of trustees and electing successors, constituted an ecclesiastical matter over which civil courts have no jurisdiction; (3) expulsion proceedings during the August 6, 1965, meeting were a nullity and of no force or effect. Other issues, not essential to determination of this appeal, are asserted.

■ I. Our review is de novo, embracing the entire action. B-W Acceptance Corporation v. Saluri, 258 Iowa 489, 499, 139 N.W.2d 399.

■ And, in considering credibility of witnesses, we give weight to fact findings of the trial court but are not bound by them. Rule 344(f) (7), R.C.P., and Bandag, Incorporated v. Morenings, 259 Iowa 998, 146 N.W.2d 916, 919.

II. First to be considered is defendants' claim, trial court erred in not holding plaintiffs' action barred by reason of the prior adjudication. Although there has heretofore been general reference to this subject, an understanding of the problem presented requires further mention of related events.

The record discloses parties to this action stipulated as follows: "* * * That the defendants Garrett, Camp, Newman, Sample and Randell were party plaintiffs in Equity Number 48554 and are parties defendant in the present cause, and that suit in Equity 48554 joined the corporation Third Missionary Baptist Church as a party plaintiff and sought an injunction against persons elected as officers of the Third Missionary Baptist Church to act as officers, and the Reverend T. Spencer Patton, Jr., as—acting as Pastor. That a temporary injunction ex parte was granted on July 14, (sic 19) 1965 but was dissolved and the Petition dismissed August 4, 1965, and no appeal was taken, and the time to perfect an appeal has transpired. * * *

"* * * That Flynn R. Griffin, party plaintiff as chairman of the Trustee Board of the Third Missionary Baptist Church in the present cause is the same person as Flynn Griffin, party defendant in Equity #48554, and that a Cross Petition by the defendants in Equity Number 48554 was filed asking that personal property of the Third Missionary Baptist Church be delivered to the defendants on behalf of the Third Missionary Baptist Church which was named plaintiff in said action, and that said Cross Petition was dismissed, no appeal was taken and the time in which to perfect an appeal on the Cross petition has expired."

Briefly stated, plaintiffs in the prior action are defendants in the case at bar, and plaintiff Griffin, in the cause now before us, was one of nine defendants in the original proceeding.

Trial court concluded plaintiffs were not barred from pursuing the case at hand by reason of the prior adjudication. We find no legally compelling reason to disagree.

■■ As stated in State ex rel. Howson v. Consolidated Sch. Dist., 245 Iowa 1244, 1248, 65 N.W.2d 168, 171: "The doctrine of

res judicata is well established and it may exist under two situations: (1), As a bar to a second action upon the cause of action, and (2), as a bar to relitigation of particular facts or issues in a different cause of action. But in both instances, the parties thereto must be identical or in privy thereto. As said in McCullough v. Connelly, 137 Iowa 682, 686, 114 N.W. 301, 302, 15 L.R.A.,N.S., 823, no one can be barred by res judicata until he has had ' "full legal opportunity for an investigation and determination" ' of the matter. See also School Twp. of Bloomfield v. Independent School District of Castalia, 134 Iowa 349, 112 N.W. 5; Kunkel v. Eastern Iowa L. & P. Co-op, 232 Iowa 649, 5 N.W.2d 899; 30 Am.Jur., Judgments, section 182; 50 C.J.S. Judgments § 686." See also Stucker v. County of Muscatine, 249 Iowa 485, 491, 87 N.W. 2d 452.

■ In dissolving the temporary injunction and dismissing the first action trial court did not reach, consider, or adjudicate the matter of right to accounting or other relief there sought by these plaintiffs.

Incidentally, though here of no special significance, defendants ask they be adjudged lawfully elected members of the church board and as such to have possessory right in all church property, real and personal. They sought the same redress in the original action. However, plaintiffs do not now assert res judicata as a bar to that relief. By virtue of the fact this is an affirmative defense to be specially pleaded defendants' prayer stands challenged only by denial generally asserted. See State v. Nichols, 241 Iowa 952, 968, 44 N.W.2d 49.

We conclude res judicata does not operate to preclude the remedy sought by plaintiffs in the instant case.

■ III. Defendants as aforesaid contend the August 5 assemblage in Garrett's backyard was a duly convened meeting of church members and action there taken must be accordingly recognized. We cannot agree.

With regard to this matter, we determined in Ragsdale v. Church of Christ, 244 Iowa 474, 55 N.W.2d 539, courts do have authority to ascertain if action taken, even though ecclesiastical in nature, was by a duly authorized board or body. See also Bouldin v. Alexander, 82 U.S. 131 (15 Wall.) 131, 21 L.Ed. 69.

Under the factual situation here disclosed, it is incumbent upon us to now determine whether proceedings undertaken at the August 5, backyard gathering were of any force or effect.

The record fails to reveal authority on the part of Garrett or any other member of the parish effectively to call, convene or conduct such an extraordinary session. It does disclose the subject church is governed completely by its members, they having the right to select and remove officers, choose and discharge the minister, and adopt their own governing rules.

On the other hand, according to testimony presented, the pastor is by custom and practice moderator of all church meetings and ex officio of its auxiliaries. Only he can install elected members of the board. If at any time the church is without a minister the deacon board may request the District Association State Convention to provide a clergyman to preside at election meetings and install officers.

Griffin and his associates were inducted by the minister as members of the board subsequent to their election at the June 26th meeting.

It is evident no one in authority called or convened the Garrett backyard conclave, no pastor served as moderator, and any purported election of trustees, to succeed the previously elected Griffin group, was of no force or effect. Furthermore those allegedly then chosen were never installed in office by the church minister or anyone standing in his position.

We can accord no recognition to the August 5 gathering or any action there purportedly taken.

IV. The June 26 meeting was previously announced. A substitute pastor presided. Some of those assembled left when trouble developed. Regardless of their justified or unjustified departure those remaining proceeded to consider and determine internal church matters brought before them. This is not a case of rule by minority. No showing is made anyone in attendance was forced or physically compelled to leave, and departure from a duly convened session of church membership does not mean the meeting is adjourned, or that those remaining are foreclosed from proceeding with the consideration and determination of ecclesiastical affairs of the parish.

Although there was no call of the roll prior to any post-departure action taken, Deacon James Simmons followed Bobby Leon Ray during his count of the votes, "to counteract anybody that shouldn't have been counted." While a roll call of members in good standing would have been preferable, we are not in a position to superimpose our views as to proper procedure. In this respect see Brown v. Mt. Olive Baptist Church, 255 Iowa 857, 859–860, 124 N.W.2d 445.

Moreover, the individuals then elected to office were officially inducted and became successors to the deposed officers.

And when, as here, any ecclesiastical action taken by those assembled is that of a duly constituted board or body of the membership, civil courts will not interfere.

V. This brings us to the ultimate issue to be resolved.

Plaintiffs ask defendants be required to account for and turn over all church property, real and personal. Trial court granted the relief prayed.

In that regard we said in Brown v. Mt. Olive Baptist Church, supra, loc. cit., 255 Iowa 859, 124 N.W.2d: "It is a general rule recognized here and in foreign jurisdictions that ordinarily the courts have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies, including membership in a church organization, but they do have jurisdiction as to civil, contract and property rights which are involved in or arise from a church controversy. 76 C.J.S. Religious Societies §§ 86 and 88; 45 Am.Jur., Religious Societies, sections 41 and 43; Sale v. First Regular Baptist Church of Mason City, 62 Iowa 26, 17 N.W. 143, 49 Am.Rep. 136; Mount Zion Baptist Church v. Whitmore, 83 Iowa 138, 49 N.W. 81, 13 L.R.A. 198; Christian Church v. Carpenter, 108 Iowa 647, 79 N.W. 375; Bethany Congregational Church v. Morse, 151 Iowa 521, 132 N.W. 14; Ragsdale v. Church of Christ, 244 Iowa 474, 55 N.W.2d 539. For a full discussion of the issues here involved see annotation, 20 A.L.R.2d 421."

And in Bethany Congregational Church v. Morse, supra, loc. cit., 151 Iowa 532, 132 N.W. 18, is this pertinent statement: "Our only judicial power * * * arises from the conflicting claims of the parties to the church property and the use of it. And these we must decide, as we do all other civil controversies brought to this tribunal for ultimate decision."

For informative discussion on the subject see also 75 Harv.L.Rev. 1142; 12 Kan.L.Rev. 436; 41 N.D.L.Rev. 353; and 41 Notre Dame L.Rev. 684.

Under existing circumstances we conclude trial court's judgment is in accord with applicable principles of law heretofore established by this court.

Affirmed.

All Justices concur, except GARFIELD, C. J., who dissents from Divisions IV and V and the result, and LeGRAND, J., who takes no part.